SO ORDERED.

Dated: May 26, 2009

REDFIELD T. BAUM, SR
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>DEWEY RANCH HOCKEY, LLC,<br><br>COYOTES HOLDINGS, LLC,<br><br>COYOTES HOCKEY, LLC, and<br><br>ARENA MANAGEMENT GROUP, LLC,<br><br>Debtors. | Case No. 2:09-bk-09488<br>(Jointly Administered)<br><br>Chapter 11<br><br>**STIPULATED INTERIM ORDER PARTIALLY GRANTING EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING** |
| This Filing Applies to:<br>■ All Debtors<br>☐ Specified Debtors | |

On May 5, 2009, the Debtors in the above-captioned cases filed their *Emergency Motion for Order Under 11 U.S.C. §§ 105, 364(c)(1) & (2), and 364(e), Fed. R. Bankr. P. 2002, 4001, and 9014, (I) Authorizing Debtors to Obtain Postpetition Financing On Superpriority And Secured Basis, (II) Granting Interim Relief, and (III) Scheduling a Final Hearing Under Fed. R. Bankr. P. 4001(c)* (the "**Motion**") [DE #21]. The Motion came before the Court at an interim hearing held on May 7, 2009 (the "**Interim Hearing**"), and appearances were as noted in the record.

In accordance with agreements announced on the record of the Interim Hearing between the Debtors, the National Hockey League (the "**NHL**"), S&E Interim Facility Corporation (the proposed lender in the Motion), SOF Investments, L.P., and the City of Glendale, Arizona, and after due deliberation and good cause appearing,

**The undersigned parties stipulate and the Court finds that:**

A. This Court has jurisdiction to hear and determine the Motion under 28 U.S.C. §§ 157 and 1334.

B. The Motion constitutes a core proceeding under 28 U.S.C. § 157(b).

C. The Debtors' notice of the Motion was reasonable and appropriate under the emergency circumstances. No additional notice of the Motion or of the entry of this Stipulated Order is required, except as provided below.

D. The Debtors and their estates would suffer immediate and irreparable harm unless the Court authorizes the Debtors to obtain financing (the "**Interim Funding**") as necessary to fund the expenses set forth in the DIP Budget attached to this Stipulated Order as Exhibit A (and as such DIP Budget may have been revised from time to time during the post-petition period), on an emergency basis before a final hearing on the Motion.

E. The NHL is willing to provide the Interim Funding under the same terms and conditions as the prepetition loans the NHL made to the Debtors under the Senior Secured Line of Credit (as defined in the Motion).

F. Any amounts loaned by the NHL under this Stipulated Order, up to and including the Interim Funding, are made in "good faith" under 11 U.S.C. § 364(e).

**IT IS ORDERED that:**

1. The Motion is granted to the extent set forth in this Stipulated Order and in accordance with 11 U.S.C. § 364 and Bankruptcy Rule 4001(c)(2).

2. The Debtors are authorized to borrow amounts up to and including the Interim Funding under the NHL's Senior Secured Line of Credit before a final hearing on the Motion under the same terms and conditions as existed immediately before the Petition Date.

3. Each Debtor is authorized to execute any documentation required to obtain the Interim Funding under the Senior Secured Line of Credit.

4. All amounts loaned by the NHL in accordance with this Stipulated Order and the Senior Secured Line of Credit, up to and including the Interim Funding, are secured by valid and perfected postpetition security interests in all of the collateral in which the NHL possessed a valid and perfected prepetition security interest in connection with the Senior Secured Line of Credit immediately before the Petition Date, and such postpetition liens have the same priority in such collateral as such prepetition security interests.

5. Nothing in this Stipulated Order affects the scope or applicability of the automatic stay of 11 U.S.C. § 362 to any amounts owing under or any security interests associated with the Senior Secured Line of Credit or any other alleged secured claim against or security interests in property of the Debtors' estates.

6. This Stipulated Order is without prejudice to the rights of any party: (a) to assert security interests in property of the estates; (b) to object to the use of cash collateral in connection with a final hearing on the Motion; (c) to object to any relief sought in the Motion; and (d) to urge the granting of any relief sought in the Motion. All written objections to the Motion are preserved for the final hearing on the Motion, except to the extent of the Interim Funding as approved in paragraphs 1 through 4 of this Stipulated Order.

7. By consent of the undersigned parties, which is limited solely to the period covered by this Stipulated Order and does not extend to any further relief of the Motion that may be sought in a final hearing on the Motion, the Debtors are authorized to use any proceeds of the Interim Funding or any other cash the Debtors receive postpetition before the final hearing on the Motion (irrespective of whether any of that cash constitutes cash collateral under 11 U.S.C. § 363(a)) in accordance with the DIP Budget attached to this Stipulated Order as Exhibit A. The DIP Budget must provide that any amounts owing to the City of Glendale related to funds the Debtors receive postpetition from sales of tickets for events at Jobing.com Arena from the

commencement of these cases forward are to be remitted to the City of Glendale if and when they are due.

8. Notwithstanding anything in this Stipulated Order or the Motion to the contrary, and under Section 365(d) of the Bankruptcy Code, from the commencement of these cases forward until further order of the Court, debtor Arena Management Group, LLC, must comply postpetition with its remittance and related obligations under Sections 7.7, 8.1.2 and 8.1.3 of the *Arena Management, Use and Lease Agreement* dated as of November 29, 2001 (as it may have been modified from time to time in writing, the "**Agreement**"), and specifically must deposit all such sums (the "**Subject Funds**") within one business day of receipt into a new, segregated account at a federally-insured commercial bank labeled as the "City of Glendale Parking Fee Trust Account." No Subject Funds may be expended or otherwise disbursed until directed by final order of this Court. Nothing in this Stipulated Order constitutes a finding or ruling as to the ownership of the Subject Funds or the existence, validity, enforceability, or priority of any prepetition or postpetition liens on the Subject Funds. The rights of all parties with respect to Subject Funds are expressly reserved, including the effect of this Stipulated Order on the Subject Funds. The Debtors must account to the City of Glendale as to all Subject Funds not less than weekly.

9. A final hearing on the Motion will take place in this Court on May 27 2009, at 9:00 a.m. (MST). The Debtors must mail a copy of this Stipulated Order and notice of the final hearing on the Motion no later than two business days following the entry of this Stipulated Order to: (a) the NHL; (b) SOF; (c) the City of Glendale; (d) any other secured creditor; (e) the top 40 largest unsecured creditors as filed with the Chapter 11 petitions in these cases; and (f) the Office of the U.S. Trustee.

10. Any objections to final approval of the relief sought in the Motion must be filed and served on the Debtors and S&E Interim Facility Corporation no later than May 22 2009, at 5:00 p.m. (MST).

**ENTERED AND DATED ABOVE**

**Stipulated and Agreed:**

SQUIRE, SANDERS & DEMPSEY L.L.P., counsel for the **Debtors**

By: /s/ Kelly Singer
    Kelly Singer

STINSON MORRISON HECKER, co-counsel for the **National Hockey League**

By: /s/ Alan Meda
    Alan A. Meda

BROWN RUDNICK, co-counsel for the **City of Glendale, Arizona**

By: /a/ Andrew Sroka
    Andrew M. Sroka

SNELL & WILMER, co-counsel for **SOF Investments, L.P.**

By: /s/ Steven Abramowitz
    Steven M. Abramowitz

# **EXHIBIT A**

Coyotes Hockey, LLC / Arena Management Group, LLC
Operating Cash Forecast
To W/E 7/25/09

Note: Due to business variables, the timing of the need for funding may vary. This would be a timing difference only and not impact total budgeted needs.

| For the Week Ending | 5/2/2009 | 5/9/2009 | 5/16/2009 | 5/23/2009 | 5/30/2009 | 6/6/2009 | 6/13/2009 | 6/20/2009 | 6/27/2009 |
|---|---|---|---|---|---|---|---|---|---|
| Opening Bank Balance | 0 | 0 | (236,495) | (1,251,841) | (5,006,100) | (7,656,684) | (8,237,040) | (9,442,386) | (10,076,544) |
| **Cash Inflows:** | | | | | | | | | |
| Hockey Tickets Sales & Renewals 09/10 | | | 100,000 | | 100,000 | | | | |
| Corporate & Suite Sponsorships | | | | | | | | 30,000 | |
| Merchandise (FMI) | | | | | 16,826 | | | | |
| AMG Ticket Sales | 275,000 | 275,000 | 275,000 | 275,000 | 275,000 | 275,000 | 275,000 | 275,000 | 275,000 |
| Aramark | | | | | 124,889 | | | | |
| **Subtotal** | 275,000 | 275,000 | 375,000 | 275,000 | 516,715 | 275,000 | 275,000 | 305,000 | 275,000 |
| **Total Cash Inflows** | 275,000 | 275,000 | 375,000 | 275,000 | 516,715 | 275,000 | 275,000 | 305,000 | 275,000 |
| **Cash Outflows:** | | | | | | | | | |
| Admin. Payroll | | | | | | | | | (710,190) |
| Revenue Sharing - WG Comp | | | (625,000) | (625,000) | (675,000) | | (625,000) | | |
| Player Signing Bonus | | | | | | | | | |
| Arena Rent and Renewal and Replacement pmt | | | (275,000) | | | | (65,000) | | (87,800) |
| Accounts Payable | | | | (1,143,098) | | (43,861) | | (148,812) | (680,866) |
| BWD/Insurance | | | | (1,520,415) | (1,381,352) | | | | (175,800) |
| AMG Event Expenses | | | | (200,000) | (300,000) | (300,000) | (300,000) | (300,000) | (300,000) |
| AZ Dept. of Rev. -Ticket Taxes | | | | | (245,000) | | | | |
| MSD Int. | | (200,000) | (200,000) | (200,000) | (200,000) | (200,000) | (200,000) | (200,000) | (200,000) |
| Interest on NHL Loans | | (15,346) | (15,346) | (15,346) | (15,346) | (15,346) | (15,346) | (15,346) | (15,346) |
| Westgate CAM Charges | | (21,149) | | | | (21,149) | | | |
| Parking & Developer Fee (from AMG and Hockey Ticket Sales) | | | | (50,400) | (75,600) | | | | (63,000) |
| Funding of Restricted Concert Funds | (275,000) | (275,000) | (275,000) | (275,000) | (275,000) | (275,000) | (275,000) | (275,000) | (275,000) |
| **Total Cash Outflows** | (275,000) | (511,495) | (1,390,346) | (4,029,259) | (3,167,298) | (855,356) | (1,480,346) | (939,158) | (2,506,002) |
| **Net Cash Inflow (Outflow)** | 0 | (236,495) | (1,015,346) | (3,754,259) | (2,650,583) | (580,356) | (1,205,346) | (634,158) | (2,231,152) |
| **Bank Balance** | 0 | (236,495) | (1,251,841) | (5,006,100) | (7,656,684) | (8,237,040) | (9,442,386) | (10,076,544) | (12,307,696) |

Page 1 of 2

Case 2:09-bk-09488-RTB    Doc 202    Filed 05/26/09    Entered 05/27/09 08:39:30    Desc
Main Document    Page 7 of 8

Coyotes Hockey, LLC / Arena Management Group, LLC
Operating Cash Forecast
To W/E 7/25/09

For the Week Ending

| | 7/4/2009 | 7/11/2009 | 7/18/2009 | 7/25/2009 |
|---|---|---|---|---|
| Opening Bank Balance | (12,307,696) | (13,141,203) | (14,881,550) | (15,446,896) |
| **Cash Inflows:** | | | | |
| Hockey Tickets Sales & Renewals 09/10 | | | | |
| Corporate & Suite Sponsorships | | | | |
| Merchandise (FMI) | | | | |
| AMG Ticket Sales | 275,000 | 275,000 | 275,000 | 275,000 |
| Aramark | 275,000 | 275,000 | 275,000 | 275,000 |
| **Subtotal** | 275,000 | 275,000 | 275,000 | 275,000 |
| Total Cash Inflows | 275,000 | 275,000 | 275,000 | 275,000 |
| | | | | |
| **Cash Outflows:** | | | | |
| Admin. Payroll | | (625,000) | | (650,000) |
| Revenue Sharing - WG Comp | | | | |
| Player Signing Bonus | (357,500) | (700,000) | (150,000) | |
| Arena Rent and Renewal and Replacement pmt | (43,861) | | | |
| Accounts Payable | (200,000) | (200,000) | (200,000) | (200,000) |
| BWD/Insurance | | | | (85,000) |
| AMG Event Expenses | | | | (100,000) |
| AZ Dept. of Rev. -Ticket Taxes | (200,000) | (200,000) | (200,000) | (200,000) |
| MSD Int. | (15,346) | (15,346) | (15,346) | (15,346) |
| Interest on NHL Loans | | | | |
| Westgate CAM Charges | (16,800) | | | (75,600) |
| Parking & Developer Fee (from AMG and Hockey Ticket Sales) | (275,000) | (275,000) | (275,000) | (275,000) |
| Funding of Restricted Concert Funds | | | | |
| Total Cash Outflows | (1,108,507) | (2,015,346) | (840,346) | (1,600,946) |
| Net Cash Inflow (Outflow) | (833,507) | (1,740,346) | (565,346) | (1,325,946) |
| Bank Balance | (13,141,203) | (14,881,550) | (15,446,896) | (16,772,842) |

Case 2:09-bk-09488-RTB    Doc 202    Filed 05/26/09    Entered 05/27/09 08:39:30    Desc
Main Document    Page 8 of 8