| | |
|---|---|
| **SCHIAN WALKER, P.L.C.** | **COVINGTON & BURLING LLP** |
| 3550 NORTH CENTRAL AVENUE, #1700 | 1201 PENNSYLVANIA AVENUE, NW |
| PHOENIX, ARIZONA 85012-2115 | WASHINGTON, D.C. 20004-2401 |
| TELEPHONE: (602) 277-1501 | TELEPHONE: (202) 662-6000 |
| FACSIMILE: (602) 297-9633 | FACSIMILE: (202) 662-6291 |
| E-MAIL: ecfdocket@swazlaw.com | E-MAIL: glevy@cov.com |
| DALE C. SCHIAN, #010445 | GREGG H. LEVY |
| CODY J. JESS. #025066 | Attorneys for the National Football League |
| Attorneys for the Movants | |
| **OFFICE OF THE COMMISSIONER OF BASEBALL** | **THE NATIONAL BASKETBALL ASSOCIATION** |
| 245 PARK AVENUE | 645 FIFTH AVENUE |
| NEW YORK, NEW YORK 10167 | NEW YORK, NEW YORK 10022 |
| TELEPHONE: (212) 931-7800 | TELEPHONE: (212) 407-8000 |
| FACSIMILE: (212) 949-5653 | FACSIMILE: (212) 888-7931 |
| E-MAIL: tom.ostertag@mlb.com | E-MAIL: rbuchanan@nba.com |
| THOMAS J. OSTERTAG | RICHARD W. BUCHANAN |
| Attorneys for the Office of the Commissioner of Baseball | Attorneys for the National Basketball Association |

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | No. 2-09-bk-09488-RTB |
| DEWEY RANCH HOCKEY, LLC, | CHAPTER 11 |
| COYOTES HOLDINGS, LLC, | (Jointly Administered) |
| COYOTES HOCKEY, LLC, and | **BRIEF OF *AMICI CURIAE* THE NATIONAL BASKETBALL ASSOCIATION, THE NATIONAL FOOTBALL LEAGUE, AND THE OFFICE OF THE COMMISSIONER OF BASEBALL IN SUPPORT OF NATIONAL HOCKEY LEAGUE'S OBJECTION TO THE DEBTORS' REQUEST TO SELL THE PHOENIX COYOTES UNDER SECTIONS 365 AND 363 OF THE BANKRUPTCY CODE** |
| ARENA MANAGEMENT GROUP, LLC, | |
| Debtors. | |
| This filing applies to:  _X_  All Debtors  ___ Specified Debtors | DATE: June 9, 2009<br>TIME: 9:00 a.m.<br>LOCATION: 230 North First Avenue<br>Phoenix, Arizona<br>Courtroom 703, 7th Floor |

Pursuant to the Court's *Order Granting Motion to File Amicus Curiae Brief* [DE 258], the National Basketball Association ("NBA"), the National Football League ("NFL"), and the Office of the Commissioner of Baseball ("MLB") submit this brief as *amici curiae* in support of the National Hockey

League's Objection to the Debtors' Request to Sell the Phoenix Coyotes Under Sections 365 and 363 of the Bankruptcy Code.

**STATEMENT OF INTEREST**

*Amici curiae* are three of the four major professional sports leagues in North America. The fourth is the National Hockey League.

The NBA is a highly integrated joint venture. It engages in the production and marketing of an entertainment product known as NBA Basketball, an annual series of professional basketball games that culminates in the determination of an NBA champion. Each of the NBA's thirty members operates a professional basketball team in a particular geographic location in North America. The NBA is governed by a Constitution and By-Laws that prescribe detailed rules and procedures addressing franchise ownership, transfers of ownership interests in NBA teams, and relocation of teams from one community to another. Any proposed relocation, as well as any ownership transfer of a team interest larger than ten percent, requires the approval of three quarters of the NBA's Board of Governors, composed of one representative of each member team.

The NFL is a highly integrated business venture. It is organized as an unincorporated association of 32 member clubs that collectively produce and market an entertainment product known as NFL Football, an annual series of professional football games that culminates in the Super Bowl Championship. Each of the NFL member clubs operates a professional football team in a particular geographic location in the United States. The NFL is governed by a Constitution and By-Laws that prescribe detailed rules and procedures addressing franchise ownership, transfers of ownership interests in NFL member clubs, and relocation of clubs from one community to another. Any proposed relocation or ownership transfer (except for intra-family transfers of ownership not relevant here) requires the approval of three quarters of the NFL's Executive Committee, which is composed of one representative of each member club.

MLB is a highly integrated business venture. It is organized as an unincorporated association of 30 member clubs that collectively produce and market an entertainment product known as

Major League Baseball, an annual series of professional baseball games that culminates in the World Series and the determination of a World Series Champion. Each MLB member club operates a professional baseball team in a particular geographic location in North America. MLB is governed by the Major League Constitution, which prescribes rules and procedures addressing franchise ownership, transfers of ownership interests in MLB clubs, and relocation of teams from one community to another. Any proposed relocation or ownership transfer of an MLB team (except for certain intra-family ownership transfers not relevant here) requires the approval of three quarters of all MLB teams.

Each of the *Amici* is committed to the long-term stability of its franchises in their current locations. Each has worked very hard to ensure that its member clubs relocate from their home communities only in the most extraordinary circumstances, and each is justifiably proud of the steps that it has taken to strengthen its ties, and those of its member clubs, to the communities that it serves.

**ARGUMENT**

The member clubs of a professional sports league are a highly integrated business venture that produces a single, collective product. No member club can produce that product on its own. Indeed, no member club can produce on its own a single unit of production; two clubs are necessary to produce even a single game. Thus, the member clubs of a professional sports league are inherently and inextricably interdependent in the production, promotion, marketing, and sale of the venture's product.

The success of a professional sports league depends, among other things, upon its ability to deliver a superior, competitively balanced product to as many fans as possible. For that reason, and because a substantial portion of the revenues earned by the venture are shared among its members, each member club has a compelling interest in the location and long-term success of each other member club, as well as in the selection and identity of each other club's owner.

1. <u>Franchise Relocation</u>. A league franchise reflects a license to serve the *league's* fans and to play *league* games in a prescribed geographical area for the benefit of the *league*. The franchise is the means by which the *league* creates a relationship with a particular community, subject only to change by *league* decision. A league's decision about where to place a franchise reflects a

variety of factors, including the geographical distribution of its member clubs, all of which are intended to further the business interests of the league as a whole.

Crucial to the success of a professional sports league are fan loyalty and community identification with its member clubs. Each professional sports league makes substantial investments to achieve those goals; such investments include not only substantial financial commitments, but also developing relationships with facility landlords, local sponsors, local vendors, and local government bodies. If successful, those investments are reciprocated by fans' investments in their local teams, including through purchases of tickets and memorabilia, time spent watching games on television, as well as an emotional commitment to the team's success on the field and its role in the community.

All of the foregoing investments -- the financial investments and the emotional commitments -- depend upon an expectation of continuity, *i.e.,* confidence that the team will remain in the community unless the *league* determines that a relocation is necessary and appropriate. Accordingly, and in order to protect those investments, *Amici* have each developed rules and procedures that govern proposed franchise relocations. The rules and procedures, which differ somewhat among the leagues, are designed to provide (i) objective factors for consideration by the league membership and (ii) an articulated and defined process for interested parties to be heard and for the league's members to consider the factors relating to a member club's proposed relocation. A single club's relocation outside the structure of these rules and procedures would put all of the foregoing investments at risk.

The common core of those rules, which have been enforced by each of the *amici* for decades, is a commitment that no club may relocate its franchise except with the approval of the league's members in the exercise of their business judgment about how best to advance the *league's* interests. In evaluating such proposed relocations, the member clubs therefore consider, among other things, the support provided to the club proposing relocation by fans and business partners in its home community; the ability of the home community to continue to support the club in the future; the adequacy of the club's playing site in its home community; the club's financial performance; the extent to which the club has engaged in good faith efforts with others in the community to secure improvements in its

circumstances; the extent to which the club's owners have contributed to circumstances that might suggest a need for relocation; the ability of the proposed new community to support the club; the impact of the proposed relocation on the game schedule and travel arrangements; and the extent to which broader league interests (as reflected in its broadcast contracts, labor contracts, and other relationships) might be advanced or adversely affected by the proposed relocation.

The National Hockey League, like *Amici*, has rules and procedures, similar to those described above, that govern proposed relocations of NHL franchises. Abrogation of those rules and procedures would adversely affect not only every other member club of the NHL -- by, among other things, substituting the perceived business interests of a particular club for the business judgment of the league -- but also the interests of *amici,* which depend upon similar rules and procedures to protect their own interests and their investments in the communities that they serve.

2. <u>Ownership</u>. As described above, the member clubs of a professional sports league are inherently interdependent in the production, promotion, marketing, and sale of the venture's product. Accordingly, each club has a fundamental and compelling interest in the structure and identity of the owner of every other club. As a result, *Amici* each have developed detailed rules and procedures governing the transfer of ownership interests in its member clubs and requirements for ownership.

The ownership rules, procedures, and requirements for the three *Amici* differ in some respects, but they share a common objective: enabling the league membership to determine whether the proposed transfer of ownership is likely to serve the best interests of the *league*, including but not limited to successful operation of the club and compliance with all established league rules and policies. Due diligence into potential new owners, which often takes months to complete, includes a detailed assessment of the proposed new owner's financial circumstances, current and former business relationships, and personal background; substantial attention is paid to circumstances that might shed light on whether the proposed new owner would be a reliable partner focused on the collective best interest of the league.

///

122713v1

-5-

Assessment of the potential owner's likely compliance with league rules is especially important. In each league, any proposed new owner must covenant in writing that, if the transfer of ownership is approved, he or she will comply with all league rules, including but not limited to rules governing franchise relocation and rules governing transfers of ownership interests. *Amici* all require approval of any transfer of ownership (with limited exceptions not relevant here) by a super-majority, three quarter vote of the entire league membership.

The National Hockey League, like *Amici*, has requirements, rules, and procedures that govern proposed transfers of ownership in NHL clubs. Abrogation of those rules and procedures -- in effect, foisting a new member on the current members of the NHL -- would adversely affect not only every other member club of the NHL but also the interests of *Amici,* each of which depends upon similar rules and procedures to ensure the success of its collective venture.

**CONCLUSION**

*Amici* respectfully endorse in principle the legal arguments advanced by the NHL in support of its objections here. Put simply, there is no legal justification for abrogating the NHL's legal right, which is protected by Section 365 of the Bankruptcy Code, to determine the owner of each NHL franchise and to determine the locations where the NHL will present its collective product. And even if there were a legal basis permitting such action, this Court should not pursue such a course, which would encourage financially challenged franchises to enlist the aid of the bankruptcy courts in an effort to circumvent established league rules that govern such league decisions.

Accordingly, *Amici* support the NHL's position that any franchise sales procedure prescribed by the Court should respect the National Hockey League's rules and procedures regarding transfers of ownership and relocation and not set precedent that has the potential to undermine the business of professional hockey and other major league sports.

DATED this __5th__ day of June, 2009.

COVINGTON & BURLING LLP
1201 Pennsylvania Avenue NW
Washington, D.C. 20004-2401

and

THE NATIONAL BASKETBALL
ASSOCIATION
645 Fifth Avenue
New York, New York 10022

and

OFFICE OF THE COMMISSIONER
OF BASEBALL
245 Park Avenue
New York, New York 10167

and

SCHIAN WALKER, P.L.C.


By /s/ DALE C. SCHIAN, #010445
    Dale C. Schian
    Cody J. Jess

Attorneys for Amici Curiae

COPY of the foregoing e-mailed
or mailed this  5th  day
of June, 2009, to:

The Parties Identified on the
Attached Service List


 /s/   DEBBI STEPHENS

122713v1

# SERVICE LIST

C. Taylor Ashworth, Esq.
Alan A. Meda, Esq.
STINSON MORRISON HECKER LLP
1850 North Central Avenue, Suite 2100
Phoenix, AZ 85004
tashworth@stinson.com
ameda@stinson.com
Attorneys for the National Hockey League

Anthony W. Clark, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
Wilmington, DE 19899
Anthony.clark@skadden.com
Attorneys for the National Hockey League

Susan M. Freeman, Esq.
Stefan M. Palys, Esq.
LEWIS & ROCA LLP
40 N. Central Avenue
Phoenix, AZ 85004-4429
sfreeman@lrlaw.com
spalys@lrlaw.com
Attorneys for PSE Sports & Entertainment and for S&E Interim Facility Corporation

Donald L. Gaffney, Esq.
SNELL & WILMER LLP
One Arizona Center
Phoenix, AZ 85004-2202
dgaffney@swlaw.com
Attorneys for SOF Investments LP, White Tip Investments, LLC, and Donatello Investments, LLC

Lori Lapin Jones, Esq.
LORI LAPIN JONES PLLC
98 Cutter Mill Rd., #201 N
Great Neck, NY 11021
Attorneys for BWD Group

Cathy L. Reece, Esq.
Nicolas B. Hoskins, Esq.
Fennemore Craig, PC
3003 N. Central Ave., #2600
Phoenix, AZ 85012-2913
creece@fclaw.com
nhoskins@fclaw.com
Attorney for the City of Glendale, Arizona

J. Gregory Milmoe, Esq.
Shepard Goldfein, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY 10036
gregory.milmoe@skadden.com
shepard.goldfein@skadden.com
Attorneys for the National Hockey League

Thomas J. Salerno, Esq.
Jordan A. Kroop, Esq.
Kelly Singer, Esq.
SQUIRE SANDERS & DEMPSEY LLP
40 N. Central Ave., #2700
Phoenix, AZ 85004-4498
tsalerno@ssd.com
jkroop@ssd.com
ksinger@ssd.com
Attorneys for Debtors

Steven M. Abromowitz, Esq.
VINSON & ELKINS LLP
666 Fifth Avenue 26th Floor
New York, NY 10103-0040
sabramowitz@velaw.com
Attorneys for SOF Investments LP, White Tip Investments, LLC, and Donatello Investments, LLC

Richard H. Herold, Esq.
HINSHAW & CULBERTSON LLP
3200 N. Central Avenue, #800
Phoenix, AZ 85012
rherold@hinshawlaw.com
Attorneys for Aramark

Albert Turi
BWD Group LLC
BWD Plaza
P.O. Box 9050
Jericho, NY 11753-8950

William R. Baldiga, Esq.
Andrew M. Sroka, Esq.
BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
wbaldiga@brownrudnick.com
asroka@brownrudnick.com
Attorneys for the City of Glendale, Arizona

Scott B. Cohen, Esq.
ENGELMAN BERGER PC
3636 N. Central Ave., #700
Phoenix, AZ 85012
sbc@engelmanberger.com
Attorneys for John Breslow

Carolyn J. Johnsen, Esq.
Peter W. Sorensen, Esq.
Jennings Strouss & Salmon, PLC
201 E. Washington, 11th Floor
Phoenix, AZ 85004-2385
cjjohnsen@jsslaw.com
psorensen@jsslaw.com
Attorneys for Jerry Moyes

Thomas H. Allen, Esq.
Paul Sala, Esq.
Allen, Sala & Bayne, PLC
1850 N. Central Ave., #1150
Phoenix, AZ 85004
tallen@axbazlaw.com
psala@asbazlaw.com
Attorneys for The Official Joint Committee of Unsecured Creditors

Jonathan K. Bernstein, Esq.
Andrew J. Gallo, Esq.
Bingham McCutchen, LLP
One Federal Street
Boston, MA 02110
jon.bernstein@bingham.com
andrew.gallo@bingham.com
Attorneys for Bingham McCutchen LLP

Carl Grumer, Esq.
Manatt, Phelps and Phillips LLP
11355 W. Olympic Blvd.
Los Angeles, CA 90064
cgrumer@manatt.com
Attorneys for AEG Facilities, Inc.

Mark A. Nadeau, Esq.
Shane D. Gosdis, Esq.
DLA PIPER LLP
2525 E. Camelback Rd., #1000
Phoenix, AZ 85016-4245
Mark.nadeau@dlapiper.com
Shane.gosdis@dlapiper.com
Attorneys for Lease Group Resources, Inc.

Ivan L. Kallick, Esq.
Illeana M. Hernandez, Esq.
MANATT PHELPS & PHILLIPS
11355 West Olympic Blvd.
Los Angeles, CA 90064
ikallick@manatt.com
ihernandez@manatt.com
Attorneys for Ticketmaster

William Novotny, Esq.
Mariscal, Weeks, McIntyre & Friedlander, PA
2901 N. Central Ave., #200
Phoenix, AZ 85012-2705
william.novotny@mwmf.com
Attorneys for Coyote Center Development, LLC

Mark S. Levinstein, Esq.
Williams & Connolly, LLP
725 12th St. NW
Washington, DC 20005
mlevinstein@wc.com
Attorneys for PSE Sports & Entertainment, LP and S&E Interim Facility Corporation