**EXHIBIT 10**

STATE OF WISCONSIN )
                   ) SS.
MILWAUKEE COUNTY )

        Being first duly sworn on my oath, I, Max D.
Soriano, do hereby certify that I am the duly elected and
qualified Secretary and the custodian of the records and
corporate seal of Pacific Northwest Sports, Inc., a corpo-
ration organized and existing under and by virtue of the
laws of the State of Washington; that the attached Agreement
between the corporation and the Milwaukee Brewers Baseball
Club, Inc. is a true and correct copy of a certain Agreement
relating to the sale of an American League franchise and the
assets of a baseball team and was duly executed on behalf of
the corporation on March 8, 1970 in accordance with law,
the Articles and By-Laws of said corporation.

        IN WITNESS WHEREOF, I have affixed my name as
Secretary of said corporation and have caused the corporate
seal of said corporation to be hereunto affixed this 9th day
of March, 1970, at 3:30 P. M. (C.S.T.)

                                   _Max D Soriano_
                                       Secretary

        Being first duly sworn on my oath, I, Dewey Soriano,
do hereby certify that I am the President and Director of said
corporation and that the foregoing statement is correct.

                                    President and Director

Subscribed and sworn to before me
this 9th day of March, 1970.

        _John A. Hazelwood_
John A. Hazelwood,
Notary Public, Milwaukee County, Wis.

My commission is permanent.

    [NOTARIAL SEAL]

## A G R E E M E N T

    This Agreement, made and entered into this 8th day of March 1970, by and between PACIFIC NORTHWEST SPORTS, INC., a Washington corporation (hereinafter referred to as "Pacific"), of Seattle, Washington and MILWAUKEE BREWERS BASEBALL CLUB, INC. (hereinafter referred to as "Brewers"), of Milwaukee, Wisconsin, a Wisconsin corporation, for the sale by Pacific and the purchase by Brewers of all of the assets of Pacific for the operation of an American League baseball team as more particularly hereinafter set forth (except cash, accounts receivable and stock interest in Pilot Properties, Inc.), subject only to the assumption by Brewers of the specific liabilities and obligations of Pacific as set forth hereinafter, and none others.

### W I T N E S S E T H :

    WHEREAS, Pacific has been operating an American League Baseball Team in Seattle, Washington ("the team"); and

WHEREAS, Brewers are interested in acquiring the ownership of the assets of the team and Pacific is willing to sell the same to Brewers upon the terms and conditions of this agreement;

NOW, THEREFORE, the parties hereto agree as follows:

## I.  ASSETS TO BE SOLD AND PURCHASED

Pacific does hereby agree to sell to Brewers, and Brewers do hereby agree to purchase from Pacific, effective the closing date, and subject to the terms and conditions and for the consideration set forth in this agreement, the following described assets of Pacific, such assets to be sold, transferred, and assigned by Pacific to Brewers by warranty deed, warranty bill of sale or other appropriate instrument of transfer, in form and substance satisfactory to Brewers and its counsel, free and clear of all liens, claims, mortgages or encumbrances of any kind and nature (except those specifically assumed herein by Brewers), it being understood and agreed that such assets include all assets necessary to the conduct of an American League Baseball team;

A) American League membership and franchise and all other incidence of ownership and benefits connected therewith.

B) The items of equipment listed on Exhibit A annexed hereto and any other equipment owned by Pacific used or usable in its baseball operations. It is understood and agreed that such equipment includes all the equipment used by Pacific during the 1969 season in the regular and ordinary course of its business, except for the normal retirement of exhausted equipment.

C) All of the contracts with players listed on Exhibit B annexed hereto and made a part hereof, and all of Pacific's rights, powers and privileges contained therein and thereunder. It is understood and agreed that all of such contracts are in the form of either the American League's player contract or the National Association of Professional Baseball League's player contract. Exhibit B also contains a statement of the amount of compensation received by each of the players from Pacific, its subsidiaries or affiliates or those having

working relationships with it for the year 1969, and if any
of such contracts provide for compensation, or formulas for
compensation, for years subsequent to the year 1969, such
information is also contained in said Exhibit B.

D)  The equity of Pacific in the major league
central fund.

E)  All renewal contracts (which are included in
Exhibit B-2) plus the right (but not the obligation) to negotiate
for renewal contracts with all minor league baseball clubs
with which Pacific has previously had contracts, agreements
or other working relationships.

F)  The rights and privileges of Pacific under and
pursuant to all insurance policies covering any of the
operations of the team.

G)  Supplies inventory.

H)  All miscellaneous assets of Pacific not speci-
fically mentioned hereinabove which are used or usable in
baseball operations.

It is understood and agreed that there shall
not be included in the sale Pacific's cash, accounts receivable,
and its stock interest in Pilot Properties, Inc.

## II.  ASSUMPTION OF LIABILITIES

A)  Brewers shall not assume Pacific's liabilities or obligations, absolute, contingent or otherwise, of any kind or nature, except as specifically set forth in this section.  Pacific does hereby agree to indemnify and to hold Brewers harmless with respect to any liability, cost or expense incurred by Brewers as a result of any claim made against Brewers for any liability or obligation of Pacific not specifically assumed by Brewers.

B)  Brewers do hereby assume the liabilities and obligations of Pacific, if any, which accrue from and after the closing date under the contracts with players listed and described on Exhibit B annexed hereto; provided, however, that Brewers do not assume any liability or obligation which may exist under any of such contracts, the terms of which are not incorporated upon Exhibit B.  The foregoing contemplates that Brewers do not assume any liability or obligation of Pacific concerning players contracts as to which Brewers have not been reasonably informed as a result of the information contained in or attached to Exhibit B or otherwise set forth in this agreement.

C) Brewers assume the liabilities and obligations of Pacific accruing after the closing date under the American League membership and franchise to be transferred to Brewers pursuant to this agreement and understand that such obligations for 1970 and 1971 will be to pay approximately two hundred sixty-five thousand dollars ($265,000) annually into the American League Central Fund (which represents player pension fund obligations) and that the American League share of gross admissions in those two years will be six (6%) percent rather than the four (4%) percent applicable to non-expansion franchises (the so-called surtax of two(2%) percent).

D) Brewers will sublease from Pacific the training facilities at Tempe, Arizona for twenty-five (25) years for fifty thousand dollars ($50,000) annually, payable in equal monthly installments. The facilities to be leased are described in the lease between Pacific and Pilot Properties, Inc., a copy of which is annexed hereto as Exhibit C. The sublease shall include the same liabilities and obligations as are contained in Exhibit C, except for the rental payments and term of the sublease.

E) It is specifically understood and agreed that Brewers assume no liability or obligation of any kind whatsoever under any of Pacific's Sicks' Seattle Stadium lease, under its indemnification agreement with the Pacific Coast League or under any of its radio, television or other similar agreements or commitments. Pacific will indemnify and hold Brewers harmless with respect to the foregoing.

- 6 -

F) Brewers assume the liabilities and obligations of Pacific under the contract with Marvin Milkes, a copy of which is annexed hereto as Exhibit D.

G) Brewers assume Pacific's liabilities and obligations, subject to its rights, powers, and privileges under that certain concession agreement with Sports Services, Inc., a copy of which is annexed hereto as Exhibit E.

### III. AMOUNTS TO BE PAID BY BREWERS TO PACIFIC

In consideration of this agreement, and of the transfer by Pacific to Brewers of the assets described in Article I hereof and the exhibits referred to therein, Brewers will pay to Pacific, in the manner and under the terms and conditions as hereinafter described the aggregate sum of ten million eight hundred thousand dollars ($10,800,000) plus the items referred to in (D) below, as follows:

A) Two million dollars ($2,000,000) by the assumption of Pacific's indebtedness under that certain note and loan agreement with Sports Services, Inc., a copy of which is annexed hereto as Exhibit F.

- 7 -

B) Eight million three hundred thousand dollars ($8,300,000) by check on the closing date.

C) Five hundred thousand dollars ($500,000) by the delivery to Pacific on the closing date of Brewers' non-interest bearing installment promissory note in the face amount of five hundred thousand dollars ($500,000) payable in twelve (12) equal monthly installments in the amount of forty one thousand, six hundred sixty-six dollars and sixty-seven cents ($41,666.67) each, beginning on the last day of the calendar month following the month in which the closing occurs, and on the last day of each of the eleven (11) months thereafter. The said note shall be in the form annexed hereto as Exhibit G and shall provide, among other things, for the offset against the amounts due hereunder any amounts to which the Brewers may be entitled as a result of the breach by Pacific of any of the warranties, covenants, conditions or other requirements of this agreement or of any exhibit hereto.

D) The assumption of the liabilities, obligations and commitments of Pacific as set forth in Section II hereof, but only the items which Brewers assume specifically under

Section II hereof, and except as specifically mentioned in (A) above.

Said purchase price shall be for the specific assets as follows:

A)  American League membership and franchise, five hundred thousand dollars ($500,000).

B)  Player contracts listed on Exhibit B, ten million, two hundred thousand dollars ($10,200,000).

C)  Other items mentioned in Section I above, one hundred thousand dollars ($100,000).

IV.  <u>REPRESENTATIONS AND WARRANTIES OF PACIFIC</u>

Pacific does hereby represent, warrant and agree with Brewers that the following are true and will continue to be true at and as of the date of closing:

A)  Pacific is a corporation duly organized, validly existing and in good standing under the laws of the State of Washington.  It owns and operates an American League baseball team in the city of Seattle, Washington referred to herein as "the team".  Pacific has full power and lawful authority to sell to Brewers the assets to be sold to Brewers pursuant to the terms of this agreement, and proper action has been

taken by its Board of Directors and its shareholders to authorize the execution of this agreement and the carrying out of the transactions contemplated hereby. At the closing Pacific will submit to Brewers duly certified copies of the resolutions of its Board of Directors and shareholders authorizing the execution and carrying out of this agreement, stating that such resolutions are, at the closing date, in full force and effect and have not been amended, rescinded and further will furnish at the closing date the opinion of MAX D. SORIANO

_____,

its general corporate counsel, to the effect that the resolutions fully comply with all legal requirements as well as the requirements of the Articles of Incorporation and By-Laws of Pacific in order to fully authorize the execution and carrying out of this agreement.

B) Pacific has obtained or will obtain all American League or other approvals necessary to transfer the operation of the American League franchise referred to hereinabove to the city of Milwaukee, Wisconsin.

C) Pacific has free, clear and unencumbered title to all of the properties and assets listed and described in Section I or the exhibits thereto and such assets are free and clear of all mortgages, liens, pledges, charges or encumbrances of any kind whatsoever, or will be so free and clear at the closing date.

D) Except for the contracts specifically listed herein or annexed hereto as exhibits, Pacific is not a party to, nor is it obligated under any contract, commitment, agreement, purchase order, or similar type obligation or commitment which requires a period of more than six (6) months to complete or which involve an obligation in excess of one thousand dollars ($1,000) or which meets both such conditions. Except for a non-player personnel medical benefits plan, Pacific is not a party to, nor is it obligated under, any deferred compensation, bonus, profit sharing, pension or other similar type of plan, contract or agreement.

E)  Pacific warrants and represents that, as between the parties hereto, Pacific is and will be solely liable and responsible to the City of Seattle for the satisfaction of any legal or equitable claims or actions, however groundless, which the City of Seattle may bring as a result of any breach or alleged breach of the stadium lease with the City of Seattle. Pacific does hereby agree to indemnify and hold the Brewers harmless from any costs, losses, or expenses, including attorneys fees, which the Brewers may incur as a result of any such claim or action brought under said lease.

F)  Pacific has disclosed to Brewers all insurance policies in effect with respect to the assets to be transferred to Brewers pursuant to this agreement; all of such policies are in full force and effect and Pacific will maintain such policies in effect through the closing date.

G)  Since October 1, 1969, Pacific has not entered into any material transaction not in the normal and regular course of its business which would have any material adverse affect upon the assets to be transferred to Brewers hereunder. Brewers are aware of the player transactions through March 5, 1970 and approve same.

H)  Since October 1, 1969, Pacific has not sold, disposed of, distributed to its shareholders or made any other transfer of any of the assets of the kind described in this agreement which would in any way materially impair the transfer of all of such assets to Brewers pursuant to this agreement.

I)  No representation or warranty made by Pacific in this agreement, nor any written statement or certificate furnished or to be furnished to Brewers pursuant to or in connection with the transactions contemplated by this agreement contains or will contain any untrue statement of any material fact or will omit from its statement a material fact necessary to make the statements contained herein not misleading.

## V.  CONDUCT OF BUSINESS PENDING CLOSING

Pending the closing, Pacific does hereby agree that since October 1, 1969 its business has been conducted in accordance with the following and that it will be so conducted to the closing date:

A)  The business will be carried on in the ordinary course, and only in the ordinary course. Pacific will not transfer any assets contemplated to be transferred to Brewers hereunder.  Pacific will not, prior to closing, and subsequent to March 5, 1970, make any disposition of player contracts without the prior written consent of Brewers and if such consent is given by Brewers, Brewers shall be entitled, in addition to the assets herein described, to the proceeds of any such disposition.

B)  Pacific will not pay or declare any dividend or make any other distribution with respect to its capital stock which would in any manner impair the receipt by Brewers on the closing date of all of the assets to be transferred to Brewers referred to in this agreement.

C)  Pacific shall permit during reasonable business hours, representatives of Brewers to inspect the properties

involved in the transactions contemplated by this agreement and to inspect and examine and make copies and extracts of all books, records, documents and other items which may reasonably be relevant to the transactions described herein. Brewers agree to maintain any information received as a result of such inspections confidential and, if the transactions contemplated by this agreement are not consummated, further agree to return to Pacific any documents and copies thereof so obtained.

D)   Pacific will use its best efforts to obtain any consents which may be needed to the assignment of any of the assets to be transferred to Brewers pursuant to this agreement and pending the closing will use its best efforts to maintain its business and the good will of all those having business relations with it.

## VI. REPRESENTATIONS AND WARRANTIES OF BREWERS TO PACIFIC

Brewers hereby represent, warrant and agree with Pacific as follows:

A) Brewers is a corporation duly organized, lawfully existing and in good standing under the laws of the State of Wisconsin. Brewers has full power and lawful authority to enter into and to carry out the transactions contemplated by this agreement and at the closing will submit to Pacific duly certified copies of resolutions of its Board of Directors authorizing the execution and carrying out of this agreement, which certificate shall state that such resolution has not been amended or rescinded to the closing date, along with the opinion of BRADY, TYRRELL, COTTER & CUTLER, its general corporate counsel, to the effect that such resolutions satisfy all legal requirements for authority to execute and carry out this agreement under the laws of the State of Wisconsin and the Articles of Incorporation and By-Laws of the Brewers.

B)  The consummation of the transactions contemplated by this agreement will not violate the provisions of any existing contract, agreement or commitment of Brewers and will be in conformance with its Articles of Incorporation and By-Laws.

## VII.  FINDERS AND BROKERS

Pacific and Brewers warrant and represent, each to the other, that there has been no finder, broker, commission agent, or other similar agent or representative which is involved in the transactions contemplated by this agreement and each agrees to indemnify and to hold harmless the other against and with respect to any claim which may be made by any such person for compensation as a result of the trans-actions under this agreement emanating from contracts al-leged to have been made by or through them.

## VIII.  CONDITIONS PRECEDENT TO BREWERS OBLIGATIONS

The obligations of Brewers hereunder shall be subject to the fulfillment of all of the following condi-tions at or prior to the closing:

A)  All of the representations and warranties of Pacific contained in this agreement shall be true at and

as of the closing date and there shall be furnished at the closing to Brewers a certificate executed by the President of Pacific to the effect that all such warranties and representations are true as of that time and that all covenants, agreements and conditions contained herein have been complied with by Pacific.

B)  Unless waived by Brewers, the receipt by Brewers of an opinion, in form and substance satisfactory to Brewers and its counsel, from MAX D. SORIANO _____

_____,

general corporate legal counsel to Pacific to the effect that:

1.  All necessary corporate action has been taken by Pacific to authorize the carrying out of this agreement in accordance with the provisions set forth herein.

2.  Pacific has good and marketable title to all of the assets to be transferred to Brewers hereunder, subject to no mortgage, pledge, lien, charge or other encumbrance, and that such assets are fully transferrable to Brewers hereunder.

3. All necessary approvals of baseball's administration with regard to the transactions under this agreement have been obtained.

C) Pacific shall have obtained all necessary approvals for the transfer of the operation of the American League membership and franchise to the City of Milwaukee, Wisconsin.

## IX.  INDEMNIFICATION

Pacific does hereby agree to hold Brewers harmless with respect to any cost or expense including attorneys fees which may result from the breach by Pacific of any of the representations, warranties, covenants or conditions of this agreement; provided, however, that Brewers shall give Pacific reasonable opportunity to

defend any claim made by any third party which may result in the application of this indemnification provision.

## X.  ESCROW

This agreement fully executed by the parties and the closing documents fully executed by the parties may be held in escrow by the attorneys for either or both of the parties subject to written instructions given to such attorneys with regard to the delivery of the agreement and closing documents and this agreement and the closing documents applicable thereto shall not be deemed delivered while held by the attorneys subject to such written instructions.

## XI.  CLOSING

The closing of the transactions contemplated by this agreement shall take place at 10:00 AM on the 1st  day of  April    , 1970, and will be deemed to take place as of the close of business on such day.

At the closing, Pacific will deliver to Brewers, in addition to the certificates, opinions and other assurances referred to hereinabove, the following:

A)  All documents of assignment in form and substance satisfactory to Brewers and its counsel and such

other instruments of transfer as may reasonably be required, covering the American League membership and franchise, and the physical assets, furniture, fixtures and equipment referred to in Section I.

B) Such instruments of transfer as requested by counsel for Brewers transferring, assigning and setting over to Brewers the player contracts listed in Exhibit B and in Section I hereof and referred to in other portions of this agreement.

C) An assignment of Pacific's rights and interests in the concession agreement hereinabove referred to as Exhibit E.

D) Assignments on forms furnished and authorized by the insurance companies involved, transferring the rights and benefits of Pacific under such insurance contracts to Brewers, said insurance contracts being only those referable to the assets transferred to Brewers hereunder.

E)    A separate sublease in form and substance satisfactory to Brewers and its counsel of the leasehold with Pilot Properties, Inc., described in Exhibit C and any consents to such sublease which may be necessary to fully and effectively transfer to Brewers the rights and privileges contained in such lease. It is further understood and agreed that at the closing Pacific will cause Pilot Properties, Inc. to enter into the amendment to such lease in the form annexed hereto as Exhibit I.

In addition to the foregoing, Pacific does hereby agree that it will, after the closing, at the request of Brewers or its counsel, deliver to Brewers such other instruments of assignment and transfer as may reasonably be necessary in order to more fully and effectively transfer to Brewers all of the assets to which Brewers are entitled to receive pursuant to the terms of this agreement.

All physical assets shall be delivered by Pacific to Brewers in Milwaukee, Wisconsin, except such assets as are situated in Tempe, Arizona which assets shall be delivered there.

On the closing date, and subject to all of the terms and conditions of this agreement and further provided that the transfer by Pacific to Brewers as set forth hereinabove are made, Brewers will deliver to Pacific the following:

A) Immediately available funds aggregating the sum of eight million, three hundred thousand dollars ($8,300,000).

B) Brewers' non-interest bearing promissory note in the face amount of five hundred thousand dollars ($500,000), in the form annexed hereto as Exhibit G.

C) An assumption agreement with respect to the two million dollar ($2,000,000) obligation to Sports Services, Inc. referred to herein as Exhibit E.

D) If requested by Pacific, an assumption agreement generally incorporating the assumption by Brewers of the obligations to the extent, but only to the extent, as set forth in Section II of this agreement.

## XII. MISCELLANEOUS

A) **Assignment:** This agreement may not be assigned by either of the parties without the written consent of the other, except that Brewers may assign this agreement to any entity which includes equity holders who presently hold at least seventy (70%) percent of the equity of Brewers.

B) **Submission of Documents:** Pacific does hereby agree to submit to Brewers or to any lending agencies of Brewers such information as may reasonably be requested by such agencies in connection with the granting to Brewers of loans required in connection with the payment of the purchase price.

C) <u>Survival of Warranties:</u>  The warranties and representations contained in this agreement shall survive the closing.

·D)  <u>Notices:</u>  All notices, requests, demands and other communication provided for herein shall be in writing and shall be deemed to have been given when mailed, postage prepaid, registered or certified, return receipt requested as follows:

```
            TO PACIFIC:  Pacific Northwest Sports, Inc.
                         2931 Seattle 1st National Bank
                          Building
                         Seattle, Washington 98104


            TO BREWERS:  Milwaukee Brewers Baseball Club, Inc.
                         c/o Mr. Edmund B. Fitzgerald, Chairman
                         Cutler-Hammer, Inc.
                         4201 North 27th Street
                         Milwaukee, Wisconsin
```

E)  <u>Counterparts:</u>  This agreement may be executed in four (4) counterparts, each of which shall be considered to have the effect of one agreement and each of which shall be deemed to be an original document.

F)   Governing Law:   This agreement shall be considered
to be a Wisconsin contract and shall be interpreted and
enforced according to the laws of that state. The parties
agree to submit to the jurisdiction of the Wisconsin Courts,
and only the Wisconsin Courts, in connection with the enforce-
ment or interpretation of this agreement.

G)   Termination:   Notwithstanding any other pro-
visions contained herein, this agreement may be terminated
by mutual written agreement of both of the parties, in which
event it shall have no further force and effect.

H)   Correspondence:   On the closing date or as
near thereafter as is practicable, Pacific will deliver to
Brewers all files and correspondence relevant to the con-
tinued operation of the team and shall, after the closing
date and as soon as practicable after receipt, transmit to
Brewers such correspondence or other documents directed to
Pacific which properly have relevance to the operation of
the team.

I) <u>Publicity</u>: The parties shall make every reasonable effort to agree upon a proper public information release concerning the transactions contemplated by this agreement and neither of the parties shall make any public statement or issue any public release concerning these transactions without first advising the other and exerting reasonable efforts to agree upon such announcement.

IN WITNESS WHEREOF, the parties have caused this agreement to be signed in their respective corporate names by their respective corporate officers heretofore duly authorized and have caused their corporate seals to be affixed and attested by their respective secretaries as of the date above written.

PACIFIC NORTHWEST SPORTS, INC.

By _____

ATTEST:                           President

_____
Secretary

[CORPORATE SEAL]


MILWAUKEE BREWERS BASEBALL CLUB, INC.

By _____

ATTEST:                           President

_____
Secretary

[CORPORATE SEAL]

# **EXHIBIT 11**

SLADE GORTON, Attorney General
WILLIAM L. DWYER
Special Assistant Attorney General
812 Hoge Building
Seattle, Washington  98104
MAin 4-7141

Attorneys for Plaintiff
 State of Washington

F I L E D
WESTERN DISTRICT OF WASHINGTON
NORTHERN DIVISION

MAR 24 1970

REFEREES IN BANKRUPTCY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
NORTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF | ) NO. 66822 |
| | ) |
| PACIFIC NORTHWEST SPORTS, INC., | ) MEMORANDUM IN OPPOSITION |
| | ) TO DEBTOR'S INJUNCTION |
| Debtor. | ) REQUEST |

## FACTS

The State of Washington and the City of Seattle filed

a civil action in the Superior Court for the State of

Washington on March 16, 1970.  The action is against

sixteen (16) separate defendants, only one of which

is the debtor herein, Pacific Northwest Sports, Inc.

The complaint alleges that all sixteen (16) defendants

have been and continue to be engaged in a conspiracy

MEMORANDUM IN OPPOSITION TO
DEBTOR'S INJUNCTION REQUEST:  1

to violate, and are violating, the antitrust laws of the
State of Washington; are in breach, and are threatening
further breaches, of the terms of contractual commitments
made to the plaintiffs; and have committed actionable fraud
upon the plaintiffs.  The course of unlawful conduct
engaged in by the defendants involves their efforts to transfer
the Seattle Pilots' franchise to Milwaukee for their own
personal benefit to the consequent damage of the plaintiffs.
Plaintiffs seek damages in    excess   of $25,000,000
against the sixteen (16) defendants, and seek an injunction
against the transfer of the franchise.  The state court
issued a temporary restraining order forbidding the transfer
of the franchise, and set a hearing on a temporary injunction
for Friday, March 20, 1970.

On March 19, 1970 -- the eve of the state court
hearing on the temporary injunction request -- Pacific
Northwest Sports, Inc. filed its petition for an
arrangement under Chapter XI of the Bankruptcy Act.
No plan was presented, and the State of Washington and the
City of Seattle's claims were not listed in the debtor's
schedule of debts.  The filing of the petition and the show
cause order issued by the Bankruptcy Court, were used as a
basis for preventing a state court hearing on the request
for a temporary injunction.  This effort failed, the
hearing on the propriety of the temporary injunction request
commenced, and has not yet been concluded.

This show cause hearing concerns the debtor's
request of the Bankruptcy Court that it enjoin all state

MEMORANDUM IN OPPOSITION TO
DEBTOR'S INJUNCTION REQUEST:  2

court proceedings.  The request is not limited to a stay

of the state court temporary injunction proceedings concerning

the franchise; it extends to the damage action as well.

The prayer in the debtor's petition is that:

> "[A]n order be entered specifically
> enjoining . . . the State of Washington,
> a state of the United States, and the
> City of Seattle, a municipal corporation,
> from proceeding in any litigation, includ-
> ing without limitation Cause No. 720599
> . . . , both in the Superior Court of the
> State of Washington.

Debtor's proposed injunction expands on its petition, and

seeks an order enjoining the continuation of plaintiffs'

action, and the commencement of any further actions.

ARGUMENT

I.   CHAPTER XI PROCEEDINGS SHOULD NOT PROCEED

A.   POWER TO REVIEW.  The Bankruptcy Court

has the inherent power and duty to determine at any time

whether Chapter XI reorganization proceedings should

proceed.  Securities & Exchange Comm'n. v. United States

Realty & Imp. Co., 310 U.S. 434, 84 L.ed 1293 (1940); 8

Collier, Bankruptcy ¶ 4.12 (14th ed.).  If the proceeding

ought not to go forward, it may be dismissed whether

the grounds are strictly jurisdictional or not. Securities

& Exchange Comm'n. v. United States Realty & Imp. Co.,

supra; 8 Collier ¶ 4.12.   The court may do so on its

own motion, or on the motion of a party adversely affected.

8 Collier ¶ 4.12.

The State of Washington (hereinafter "the

State") raises the question of the Bankruptcy Court's

MEMORANDUM IN OPPOSITION TO
DEBTOR'S INJUNCTION REQUEST: 3

1  power to proceed as requested by the debtor, but neither

2  submits its damage claims to the Bankruptcy Court  nor

3  consents to the jurisdiction of the court over such

4  claims.  The debtor has not yet filed with the court

5  its proposed plan for an arrangement.  The State's

6
7  claims have been omitted from the bankrupt's schedules;

8  nevertheless, under 11 USCA § 707, the State is a creditor

9  and entitled to question these proceedings as a creditor

10  adversely affected thereby.  11 USCA § 701 provides,

11  in pertinent part:

12
13        "Unless inconsistent with the context and
      for the purposes of an arrangement provid-
      ing for an extension of time for payment
14      of debts in full and applicable exclusively
      to the debts to be extended --
15
        "(1)  "creditors' shall include the holders
16      of all unsecured debts, demands, or claims
      of whatever character against a debtor,
17      whether or not provable as debts under
      section 103 of this title and whether
18      liquidated or unliquidated, fixed or
      contingent; and
19
20        "(2)  'debts' or 'claims' shall include
      all unsecured debts, demands, or claims
21      of whatever character against a debtor,
      whether or not provable as debts under
22      section 103 of this title and whether
      liquidated or unliquidated, fixed or
23      contingent."
24
25  A creditor may be adversely affected, depending on the plan
26
27  of arrangement even though his claim is not dealt with

28  in the proceedings.  8 Collier, ¶ 2.43.

29
30        B.   CHAPTER X RATHER THAN CHAPTER XI.  The
31  State submits that in the public interest the debtor should

32  be required to comply with the Chapter X reorganization

MEMORANDUM IN OPPOSITION TO
DEBTOR'S INJUNCTION REQUEST:  4

provisions, and should not be permitted to proceed further with the Chapter XI arrangement.

In large measure Chapter XI, pertaining to arrangements, and Chapter X, pertaining to reorganizations, are parallel, but Chapter X is to be used whenever Chapter XI is inadequate. _Avery v. Fisher_, 360 F.2d 719 (5th Cir. 1966).

Where the relatively simple procedures of Chapter XI are not sufficient to protect the public interest, the debtor is required to proceed under Chapter X rather than under Chapter XI. _Securities & Exchange Comm'n. v. United States Realty & Imp. Co._, 310 U.S. 434, 84 L.ed 1293 (1940). The Court, after comparing the safeguards and remedies available under Chapter X, with the limited scope of Chapter XI, said:

> "A court of equity may in its discretion in the exercise of the jurisdiction committed to it grant or deny relief upon performance of a condition which will safeguard the public interest. It may in the public interest, even with- hold relief altogether, and it would seem that it is bound to stay its hand in the public interest when it reasonably appears that private right will not suffer.
>
>       \*     \*     \*
>
>       \*     \*     \*
>
> "Respondent's circumstances, as disclosed by its petition and proposed arrangement, are such as to raise a serious question whether any fair and equitable arrangement in the best interest of creditors can be effected without some re-arrangement of its capital structure.

* * *

> "Pending the litigation respondent seeks
> to stay the hand of its creditors and in
> the meantime to avoid that inquiry into
> its financial condjtion and practices and
> its business prospects, provided for by
> chapter X without which there is at least
> danger that any adjustment of its indebted-
> ness will not be just and equitable, and
> that its revived financial life will be
> too short to serve any public or private
> interest other than that of respondent."

310 U.S. at 455-6, 84 L.ed. at 1303-4.

The absence of safeguards for the public interest will, there-

fore, counteract any private interest in proceeding under

Chapter XI, and the Chapter XI arrangement must be dismissed

to permit compliance with Chapter X relating to reorganizations.

Securities & Exchange Comm'n. v. Crumpton Builders, Inc.,

337 F.2d 907 (5th Cir. 1964); Securities & Exchange Comm'n.

v. Liberty Baking Corp., 240 F.2d 511 (2d Cir. 1957);

8 Collier, Bankruptcy ¶ 4.12; 8B CJS Bankruptcy § 751.

The debtor in this proceeding is obviously

principally interested in disposing of its major asset --

the baseball franchise.  The Chapter XI proceedings afford

no way for an independent study of the affairs of the

debtor, and there is little or no court supervision over

the proceedings.  The arrangement may be arranged in

advance with certain creditors, and the entire matter

can be consummated at one meeting.  No method is provided

for an independent examination of the value of the

asset sought to be sold, and the adequacy of the consideration

to be received therefor.  In view of the obvious public

interest in the type arrangement proposed by this debtor,

the safeguards of Chapter X are required.

        C.   CHAPTER XI PROCEEDING NOT IN GOOD FAITH.

If a Chapter XI petition has not been filed in good faith,
it may be dismissed by the Bankruptcy Court, and no further
proceedings under Chapter XI are permitted.  8 Collier,
¶ 3.16 at p. 245.

        An arrangement under Chapter XI means "any plan
of a debtor for the settlement, satisfaction, or extension
of the time of payment of his unsecured debts . . .",
11 USCA § 706(1) (emphasis supplied).   Thus, an
arrangement under Chapter XI pertains exclusively to an
arrangement of the unsecured claims asserted against
a debtor.  Securities Exchange Comm'n. v. United States
Realty & Imp. Co., supra; Securities Exchange Comm'n.
v. American Trailer Rentals, 379 U.S. 594, 13 L.ed.2d,
510 (1965); United States v. National Furniture Co., 348
F.2d 390 (8th Cir. 1965); 8 Collier ¶ 2.06.  It is not
designed to deal with or handle the debtor's difficulties
with secured creditors or shareholders, but only to modify
or affect the rights of unsecured creditors.  8 Collier
¶ 2.07[3], 8B CJS Bankruptcy §§ 743-4.

        The purpose of a Chapter XI proceeding is to
resuscitate the debtor, if that is a reasonable prospect,
by the adoption of a workable plan.  8 Collier, ¶ 3.16;
8B CJS Bankruptcy § 743 at p. 489.  Therefore, a liquidation
of the debtor, and the subsequent distribution of the
debtor's property is not within the contemplation of

Chapter XI.   In re Pure Penn Petroleum Co., 188

F.2d 851 (2d Cir. 1951); In re Prudence Bonds Corp.,

77 F.2d 328 (2d Cir. 1935), cert. denied, 80 L.ed.

413; 8 Collier ¶ 4.01.   In the Pure Penn case, supra,

at 855 the court held:

> "But notwithstanding the breadth of the
> definition of an arrangement under
> Chapter XI, the arrangement must
> comprehend something more than a
> mere surrender by the debtor of all
> his assets for liquidation and distribu-
> tion to creditors; an arrangement is defined as
> a 'plan of the debtor,' but there is no 'plan-
> ning' by a bankrupt in proposing that his
> creditors be given what the law provides
> in liquidation under straight bankruptcy."

Chapter XI may not be used to evade the normal bankruptcy

route; thus, where the commencement of the Chapter XI

proceeding is with the intent of total liquidation

rather than to preserve the debtor as a going concern,

the filing is in bad faith and the Chapter XI proceedings

should be dismissed.  8 Collier, ¶ 3.16.

An arrangement prposed by a debtor cannot be

confirmed unless it is for the best interests of the

creditors, is feasible, is not subject to grounds barring

discharge, and is in good faith.  9 Collier ¶¶ 9.15 - 9.20.

Plans for an arrangement are not in good faith if they

are used to achieve a benefit for one group of creditors

at the expense of another.  Securities Exchange Commission

v. Crumpton Builders, 337 F.2d 907 (5th Cir. 1964);

In re Pure Penn Petroleum Co., supra.  The statutory

objective of the Bankruptcy Act is to "achieve fairness

to all persons having claims against an insolvent".  Reading

MEMORANDUM IN OPPOSITION TO
DEBTOR'S INJUNCTION REQUEST:  8

<u>v. Brown</u>, 391 U.S. 471, 477, 20 L.ed. 751, 755 (1968).

The filings in this case make clear that the sole objective of the Chapter XI proceedings is to permit the debtor's transfer of the baseball franchise to Milwaukee for over ten million ($10,000,000) dollars, in order to permit payment of the secured creditors, the Bank of California and Sportservice, Inc. and of the shareholders' advances. The claims of the State and the City of Seattle are not even mentioned, even though they are the largest claims asserted. It is clear from the petition that the debtor is not seeking to remain in business, but to liquidate its assets, and to distribute the proceeds, primarily to secured creditors and to the shareholders. Of course, this distribution is to be at the expense of the State and the City of Seattle. These Chapter XI proceedings have, therefore, been commenced to achieve a benefit by way of full payment on loans made by secured creditors and the shareholders and are not properly brought. They should be dismissed by the Bankruptcy Court.

II. <u>STATE COURT PROCEEDINGS SHOULD NOT BE ENJOINED</u>.

The Bankruptcy Court's jurisdiction under Chapter XI extends solely to "the debtor and his property, wherever located". 11 USCA § 711. In the exercise of its jurisdiction, the Court under 11 USCSA § 714, may "enjoin or stay until final decree the commencement or continuation of suits. . . ."

The power to enjoin another court is vested solely

MEMORANDUM IN OPPOSITION TO
DEBTOR'S INJUNCTION REQUEST: 9

in a judge of the Bankruptcy Court under § 2a(15) of the Bankruptcy Act. _Steelman v. All Continent Corp._, 301 U.S. 278, 81 L.ed. 1085 (1937). Notwithstanding the provisions of §§ 711 and 714, an injunction is not a matter of right. _Foust v. Munson Steamship Lines_, 299 U.S. 77, 81 L.ed. 49 (1936); 8 Collier, ¶ 3.20[4]; 3.21[3]. It is not the automatic result of filing a petition proposing an arrangement. _In re Lieb Bros., Inc._, 193 F.Supp. 229 (D. N.J. 1961), 8 Collier ¶3.21[2] and [3]; 8 CJS, Bankruptcy § 773.

A stay of court proceedings, or an injunction against them is within the discretion of the Bankruptcy Court. _Foust v. Munson Steamship Lines_, 299 U.S. 77, 81 L.ed. 49; _In re Laufer_, 230 F.2d 866 (2d Cir. 1956); 8 Collier ¶¶ 3.20[3], 3.21[3], 8B CJS, Bankruptcy § 773. A stay or an injunction must not, however, be unjust under all the circumstances; if it is, the granting of such relief is an abuse of discretion. _Foust v. Munson Steamship Lines_, _supra_. 8 Collier ¶ 3.20; 3.21[2] and [3]. To make a determination of what is just, the Bankruptcy Court must:

> ". . . be guided by considerations
> that under the law make for the
> ascertainment of what is just to the
> claimants, the debtor and the
> estate."

_Foust v. Munson Steamship Lines_, _supra_, at 83, 81 L.ed. at 54.

The enjoining of court proceedings not affecting the jurisdiction of the Bankruptcy Court over the debtor and his property is improper. _Callaway v. Benton_,

MEMORANDUM IN OPPOSITION TO
DEBTOR'S INJUNCTION REQUEST: 10

336, U.S. 132, 93 L.ed. 553 (1949). The Supreme Court in

Callaway v. Benton, supra, held:

> "There can be no question, however,
> that Congress did not give the bankruptcy
> court exclusive jurisdiction over all
> controversies that in some way affect
> the debtor's estate."

Id at 142, 93 L.ed. at 561.

Therefore, where the court proceedings sought to be

enjoined do not involve the property of the debtor,

an injunction against these proceedings is improper.

Callaway v. Benton, supra; Slenderella Systems of Berkeley

v. Pacific Tel. & Tel. Co., 286 F.2d 488 (2d Cir. 1961).

Where the claims involve property not within the possession

of the debtor, or where there is a substantial question

of ownership, the Bankruptcy Court lacks jurisdiction. Slenderella

Systems of Berkeley v. Pacific Tel. & Tel. Co., supra.

Correspondingly, the Bankruptcy Court has no

jurisdiction to interfere in actions involving third parties

other than the debtor, even where such actions arise

from the business of the debtor, and injunctions issued

against such actions are improper. In re Magnus Harmonica

Corp., 233 F.2d 803 (3d Cir. 1956); 237 F.2d 869 (3rd Cir.

1956); Evarts v. Eloy Gin Corp., 204 F.2d 712 (9th Cir.

1953); Nine North Church Street, Inc., 82 F.2d 186 (2d Cir.

1936); In re 4145 Broadway Hotel Co., 124 F.2d 891 (7th

Cir. 1941); In re Prudence Bonds Corp., 122 F.2d 258.

"Congress did not intend [that the Bankruptcy Court] . . .

take over all litigation between the debtor and third

persons". United States v. Tacoma Oriental S.S. Co.,

MEMORANDUM IN OPPOSITION TO
DEBTOR'S INJUNCTION REQUEST: 11

86 F.2d 363 (9th Cir. 1936)

Though an injunction or stay order may be within the power of the Bankruptcy Court, it ought not to be granted unless the state court proceeding will so hinder, obstruct and delay the plan of arrangement as probably to defeat it. Callaway v. Benton, supra; Foust v. Munson Steamship Lines, supra; In re Laufer, 230 F.2d 866 (2d Cir. 1956). More inconvenience or annoyance to the debtor in preparing the plan is not a sufficient ground for an injunction. In re Laufer, supra; In re Tracy, 194 F.Supp. 293 (N.D. Cal. 1961).

Because of the reluctance of the federal judiciary to stay state court proceedings, injunctions issued by the bankruptcy court should be strictly limited in scope and should not extend beyond what is necessary to prevent such hindrance. Ibid. See also, Texas Co. v. Hauptman, 91 F.2d 449 (9th Cir. 1937).

Injunctions issued against a sovereign proceeding to enforce its rights are not proper unless the sovereign has waived its immunity from such injunctions. United States v. Mel's Lockers, Inc., 346 F.2d 168 (10th Cir. 1965).

Injunctions or stay orders issued by the Bankruptcy Court against proceedings in another jurisdiction are intended solely to preserve the status quo and to permit the collection and holding of the assets pending confirmation of the arrangement plan. In re Lieb Bros., Inc., 198 F.Supp. 229 (D. N.J. 1961). A Bankruptcy Court, even if it possesses jurisdiction, may postpone its actions

1 to await a determination by another court, such as

2 where the status quo is being preserved in the other

3 court. See Ex parte Baldwin, 291 U.S. 610, 78 L.ed 1020.

4 The State objects to the assertion of any jurisdiction

5 by the Bankruptcy Court over it or the state court

6 proceedings brought by it. The state court proceedings

7 involve claims of antitrust violations, breach of contract,

8 and fraud against sixteen (16) defendants. The debtor

9 is only one of the named defendants. The Bankruptcy Court

10 has no jurisdiction over this type of action.

11 Moreover, the franchise, the transfer of which the State

12 seeks to restrain in the state court proceeding, is no longer

13 the property of the debtor. The Constitution of the American

14 League of Professional Baseball Clubs, dated January

15 1, 1966, which governs the rights of its franchise holding

16 members (of which defendant is one), provides:

> "[E]ach and every Member of the League,
> whether now a Member or at any time here-
> after becoming a Member, agrees that
> the membership of any Member of this
> League may be terminated upon any one
> of the following grounds or reasons:
>
> *   *   *
>
> "(k) The making of an assignment for
> the benefit of its creditors, or the
> filing of a voluntary petition in
> bankruptcy, or the appointment of a
> receiver or trustee in bankruptcy for
> the properties and assets of the Member,
> or the institution of reorganization
> proceedings in bankrtuptcy by the
> Member."

and

> "(a) Charges and Hearing. In events
> (c) and (k) set forth in Section 3.8

the membership of the Member concerned shall
terminate automatically upon the occurrend
of the event."

and

"Effect of Termination.  Upon resignation
from or termination of membership in
accordance with Section 3.7 or Section 3.9,
the Member affected shall thereupon at
once surrender all its rights and
privileges as a Member of the League,
and deliver to the President of the
League, for the League, the possession
and control of its baseball park (or
leasehold interest therein, if such
park is leased by such Member) and its
baseball club and any other baseball
properties held or owned by it, including
the contracts of all its players and other
employees.  The President of the League
shall, on behalf of the League, operate
such properties and club, continuing
the playing of games, collection of
all income and receipts and paying
therefrom all expenses in connection
therewith, and if such income and receipts
do not prove sufficient, paying the balance
of such expenses out of the funds of the
League until all of said properties,
including the contracts of such players
and other employees, may be sold and
assigned in accordance with the
procedure prescribed in Section 3.12."

It is readily, apparent from the quoted language, that

the debtor's filing of the petition herein automatically

terminated its membership, and caused it to be divested

of its franchise.  Hence, the baseball franchise of the

debtor was not its property at the time the petition

was filed, and the Bankruptcy Court lacks jurisdiction

to make any orders concerning it.

The right of the Bankruptcy Court to enjoin

court proceedings brought by a sovereign state is

in considerable question, and, hence, an injunction

MEMORANDUM IN OPPOSITION TO
DEBTOR'S INJUNCTION REQUEST:  14

issued herein could exceed the court's jurisdiction.

The Bankruptcy Court, furthermore, should not stay the state court proceedings for a temporary injunction against transfer of the franchise. The state court proceedings preserve the status quo, and do not unduly hinder the formulation of the arrangement. Whether a temporary injunction should issue against transfer of the franchise is the subject of a hearing now pending before the state court. The hearing will be concluded shortly, and a decision will undoubtedly be rendered before the end of the week. Meanwhile, the status quo has been preserved. The restraining of further proceedings at this time would be unjust under all the circumstances, and would create an undue and unnecessary conflict between the Bankruptcy Court and the state courts.

Insofar as the debtor seeks a broad order prohibiting the damage actions commenced in the Superior Court of the State of Washington from going forward, the requested relief is manifestly beyond the jurisdiction of the Bankruptcy Court, and is clearly unjust. The debtor is only one of sixteen (16) named defendants. The issues raised in the action are not such as to be cognizable in the Bankruptcy Court, and in no way involve a claim to the property of the debtor. The prosecution of the state court action will not prevent the formulation of the arrangement plan for the debtor, while a staying of the action while the debtor attempts

to work out its affairs will cause manifest injustice
to the State.  In this case, the debtors private
interest in proceeding in the Chapter XI proceedings
must yield to the higher public interest reflected
in the state court action brought against the
sixteen (16) named defendants.

CONCLUSIONS

The Court should not grant the relief requested by
the debtor on its show cause order, because:

(a)  These Chapter XI proceedings should not
proceed further, but should be dismissed; and

(b)  The granting of the injunction sought by
the debtors would be in excess of the Court's jurisdiction
and would work a manifest injustice.

Respectfully submitted,

SLADE GORTON
Attorney General

WILLIAM L. DWYER
Special Assistant Attorney General

By _____
William L. Dwyer
Of Attorneys for Plaintiff
State of Washington

MEMORANDUM IN OPPOSITION TO
DEBTOR'S INJUNCTION REQUEST:  16

**EXHIBIT 12**

FILED IN THE
UNITED STATES DISTRICT COURT
Western District of Washington

MAY 2- 1972

CHARLES A. SCHAAF, Clerk
By_____, Deputy

Aiken, St. Louis & Siljeg
1215 Norton Building
Seattle, Washington 98104
MAin 4-2650

F   IN THE
UNITED STATES DISTRI    OURT
Western District of Washington
Northern Division

MAR 1 9 1970

HAROLD W. ANDERSON, CLERK
By_____ Deputy

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
NORTHERN DIVISION

In the Matter of          )    IN PROCEEDINGS FOR
                          )    AN ARRANGEMENT CHAP XI
PACIFIC NORTHWEST SPORTS, INC.)
                          )    No. 66822
            Debtor.       )

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON, NORTHERN DIVISION:

The petition of Pacific Northwest Sports, Inc., of
2700 Rainier So., Seattle, King County, Washington, and engaged
in the business of conducting a professional baseball business,
respectfully represents:

1.  Your petitioner is a business corporation organized
and existing under the laws of the State of Washington, and is a
corporation which could become a bankrupt under the Bankruptcy Act,
and is not a municipal, railroad, insurance or banking corporation,
or building and loan association.

2.  Your petitioner has had its principal place of busi-
ness at 2700 Rainier So., Seattle, King County, Washington, within
the above jurisdictional district for a period of longer than six
months immediately preceding the filing of this petition than in
any other judicial district.

3.  Within six years next preceding the filing of this
petition, your petitioner has not been known, and has not conducted

Proceedings for Arrangement - 1

AIKEN, ST. LOUIS & SILJEG
ATTORNEYS AT LAW
1215 NORTON BLDG.
SEATTLE, WASH. 98104
MAIN 4-2650

1   any business by or under any assumed, trade or other names or
2   designation except "Seattle Pilots".

3       4. No bankruptcy proceeding, initiated by a petition
4   by or against your petitioner, is now pending.

5       5. Your petitioner, for reasons hereinafter set forth,
6   is unable to pay its debts as they mature, but is solvent and
'7  intends to propose an arrangement pursuant to the provisions of
8   Chapter XI of the Bankruptcy Act.

9       6. Your petitioner intends to propose an arrangement
10  under Chapter XI of the Bankruptcy Act, which arrangement, if the
11  sale hereinafter described is consummated, will pay its existing
12  creditors, secured and unsecured, in full. That there is annexed
13  hereto marked Schedule "A" and verified by your petitioner's
14  oath, a full and true statement of all of its debts, insofar as
15  it is possible to ascertain; the names and places of residence
16  or business of its creditors, and such further statements concern-
17  ing said debts as are required by the provisions of the Bankruptcy
18  Act.

19      .7. The schedule hereto annexed, marked Schedule "B" and
20  verified by your petitioner's oath, contains an accurate inventory
21  of all of its property, real and personal, and such further state-
22  ments concerning said property as are required by the provisions
23  of said Act.

24      8. The statement hereto annexed, marked Exhibit 1, and
25  verified by your petitioner's oath, contains a full and true
26  statement of all of its executory contracts, as required by the
27  provisions of said Act.

28      9. Your petitioner owns and operates the baseball team
29  known as the "Seattle Pilots". As such, it is a member of the
30  "American League of Professional Baseball Clubs", an unincorporated
31  association. The other members are comprised of the other teams
32  Proceedings For Arrangement - 2

AIKEN, ST. LOUIS & SILJEG
ATTORNEYS AT LAW
1218 NORTON BLDG.
SEATTLE, WASH. 98104
MAIN 4-2800

of the American League. As a member of such Association, your
petitioner is the owner of a right to conduct baseball in Seattle.
Your petitioner has experienced severe financial difficulties, and
as aforesaid, is unable to meet its debts as the same mature.
Recognizing this problem, your petitioner entered into a contract of
sale with Mr. Fred Danz, of Seattle, Washington, providing for sale
of substantially all of petitioner's assets. Mr. Danz did not con-
summate said purchase. Your petitioner subsequently entered into an
agreement for the sale of its assets to Milwaukee Brewers Baseball
Club, Inc. (hereinafter referred to as Brewer's, Inc.), subject
solely to approval of said League. In the interim, various parties,
including Alfred J. Schweppe, the City of Seattle and the State of
Washington have commenced litigation endeavoring to enjoin the
sale to Brewers, Inc., and otherwise harrass petitioner and destroy
its assets, to-wit, the right to sell its membership or franchise
in said League. None of the plaintiffs in the pending civil suits
have offered or tendered a bond to indemnify your petitioner
against loss in the event the sale to Brewers, Inc. is not consum-
mated. Your petitioner is without funds to finance the operations
of the baseball club in Seattle in 1970.

10. Petitioner intends to continue the operation of the
baseball team to the extent its finances permit, if the sale to
Brewers, Inc. is not consummated. Debtor's principal creditor is
The Bank of California, N.A., to whom your petitioner has pledged
its assets. Under the terms of the sale, the proceeds are to be
first distributed to said Bank. The total sale price is the sum of
$10,800,000, together with costs incurred and accruing. Said sum
is available in cash, and the transaction could be completed forth-
with but for the present litigation against Petitioner.

WHEREFORE, your petitioner prays that proceedings may be
had in accordance with the provisions of Chapter XI of the
Proceedings for Arrangement - 3

AIKEN, ST. LOUIS & SILJEG
ATTORNEYS AT LAW
1218 NORTON BLDG.
SEATTLE, WASH. 98104
MAIN 4-2650

1  Bankruptcy Act; that notwithstanding that the filing of this
2  petition constitutes an automatic injunction, that an Order be
3  entered specifically enjoining Alfred J. Schweppe, the State of
4  Washington, a state of the United States, and the City of Seattle,
5  a municipal corporation, from proceeding in any litigation, includ-
6  ing without limitation Cause No. 720599 and Cause No. 720522, both
7  in the Superior Court of the State of Washington.

8         11.  The execution and filing of this petition were duly
9  authorized by resolution of the Board of Directors of petitioner,
10 adopted at a meeting thereof, as shown by certified copy of such
11 resolution attached hereto as Exhibit 3.

                              PACIFIC NORTHWEST SPORTS, INC.
13                        By _Arthur H McKean_____
                              Assistant Secretary
14                            Petitioner

15 AIKEN, ST. LOUIS & SILJEG
16 By_Wallace Aiken_____
      Wallace Aiken
17    Attorneys for Petitioner

18 STATE OF WASHINGTON)
                      :  ss.
19 COUNTY OF  K I N G)

20        ARTHUR H. McKEAN makes solemn oath that he is the Assist-
21 ant Secretary of PACIFIC NORTHWEST SPORTS, INC., the petitioner
22 named in the foregoing petition, and is duly authorized to make
23 said petition and this affidavit in its behalf, and that the state-
24 ments contained in said petition are true according to the best
25 of his knowledge, information and belief.
26                            _Arthur H McKean_____

27 SUBSCRIBED AND SWORN TO before me this 18th day of March, 1970
28                            _____
29                            Notary Public in and for the State
                              of Washington, residing at Seattle

30

31

32 Proceedings for Arrangement - 4

| Prepared By |  |
| Approved By |  |

| NAME | (1) | (2) AMOUNT | (3) EXPLANATION | (4) |
|------|-----|--------|-------------|-----|
| Afco<br>White-Henry-Stuart Building<br>Seattle, Washington 98101 | ✓ | $1,221.25 | Players Insurance - March payment |  |
| A. B. Dick Company<br>4301 Aurora North<br>Seattle, Washington 98103 | ✓ | 152.99 | Maintenance contract |  |
| American Express<br>P. O. Box 1934<br>New York, New York 10008 | ✓ | 485.32 | Expenses - M. Milkes, D. Soriano and charges for s[c]...<br>in Ft. Lauderdale |  |
| American Express<br>P. O. Box 3675<br>Miami, Florida | ✓ | 40.60 | Exp. - M. Milkes |  |
| A1 & Leon's Furniture<br>2021 - 27 First Avenue<br>Seattle, Washington 98121 | ✓ | 137.94 | Rental - Furniture - Ladie[s]<br>Rest Room - Feb. & March |  |
| Addressograph Multigraph Corp.<br>P. O. Box 3202 Rincon Annex<br>San Francisco, California 94120 | ✓ | 52.25 | Prepaid account for purcha[se]<br>certified addressograph pro[...]<br>and services. |  |
| Allen's Clipping Bureau<br>303 Columbia Building<br>Seattle, Washington 98101 | ✓ | 162.00 | Services for Jan. & Feb. |  |
| American Federation of Televeision & Radio Artists<br>158 Thomas Street #31<br>Seattle, Washington 98109 | ✓ | 12.00 | Quarterly dues - Bill Sear[s] |  |
| American Credit Bureau<br>Post Office Box 20546<br>Phoenix, Arizona 85036 | ✓ | 23.50 | Hospital bill - player Joa[n]<br>Vidal |  |
| Addressograph Multigraph Corp.<br>P. O. Box 3202, Rincon Annex<br>San Francisco, California 94120 | ✓ | 246.98 | Plastic Cards |  |
| Associated Sample Case & Luggage Repair<br>212 Blanchard Street<br>Seattle, Washington | ✓ | 83.08 | Repair - Equipment trunks [&] |  |
| Avis Rent A Car<br>P. O. Box 201<br>Garden City, New York 11530 | ✓ | 524.05 | Dec. Jan & Feb. bills - Ca[r]<br>for M. Milkes, Jim Kittil[s]<br>in Phoenix and Bill Sears [...]<br>Yakima |  |
| Hotel Biltmore<br>(Realty Hotels)<br>Madison Avenue at 43rd Street<br>New York, New York 10017 | ✓ | 229.37 | Hotel bill for Wm. Daley a[nd]<br>Scout Tom Kane |  |

SEATTLE PILOTS

ACCOUNTS PAYABLE

March 18, 1970

| | NAME | (1) | | (2) AMOUNT | (3) EXPLANATION | (4) |
|---|---|---|---|---|---|---|
| 1 | Baseball | ✓ | | $652.85 | College Scholarship Plan i | |
| 2 | Office of Commissioner | | | | behalf of James G. Thomas | |
| 3 | 680 Fifth Avenue | | | | Spring semester - Baptist | |
| 4 | New York, New York 10019 | | | | College at Charleston | |
| 5 | B.O.M.A. Local 6 Pension Trust Fund | ✓ | | 16.00 | Feb. pension payment | |
| 6 | c/o Seattle First National Bank | | | | | |
| 7 | P. O. Box 1273 | | | | | |
| 8 | Seattle, Washington 98111 | | | | | |
| 9 | Boise Cascade Office Supply | ✓ | | 488.37 | Office Supplies - November | |
| 10 | 5930 Fourth Avenue South | | | | through February 1970 | |
| | Seattle, Washington 98108 | | | | | |
| 11 | | | | | | |
| 12 | Camp Lewis Tent & Awning Company | ✓ | | 97.19 | Base covers & repair of | |
| 13 | 1007 - 11 First Avenue | | | | dodgers | |
| 14 | Seattle, Washington 98101 | | | | | |
| 15 | Chinook Motel & Tower | ✓ | | 13.70 | Bill Sears - Yakima press | |
| 16 | East Yakima Avenue & Fourth Street | | | | | |
| 17 | Yakima, Washington 98901 | | | | | |
| 18 | William Clark | ✓ | | 154.13 | Scouting expenses 2/16 - 3, | |
| 19 | 3906 Grace Ellen Drive | | | | | |
| 20 | Columbia, Missouri 65201 | | | | | |
| 21 | Chris Sign Company | ✓ | | 40.76 | Changes in seating chart | |
| 22 | 908 - 8th Avenue North | | | | | |
| 23 | Seattle, Washington 98109 | | | | | |
| 24 | Cleveland Riggers & Erectors | ✓ | | 168.00 | Pickup charge for team equi | |
| 25 | 20234 Detroit Road | | | | | |
| | Cleveland, Ohio 44116 | | | | | |
| 26 | Coast Wide Supply Company | ✓ | | 12.44 | Cloths for use in Stadium | |
| 27 | 115 Bell Street | | | | | |
| 28 | Seattle, Washington 98121 | | | | | |
| 29 | | | | | | |
| 30 | Commerce Clearing House | ✓ | | 13.81 | Audilex Cassette Set | |
| 31 | 4025 West Peterso. Avenue | | | | | |
| 32 | Chicago, Illinois 60646 | | | | | |
| 33 | Continental Plaza | ✓ | | 752.32 | Hotel charges - M. Milkes | |
| 34 | 909 North Michigan Avenue | | | | Soriano, M. Soriano, W. Dal | |
| 35 | Chicago, Illinois 60611 | | | | and J. Tomlinson | |
| 36 | | ✓ | | | | |
| 37 | Crescent Manufacturing Company | | | 19.50 | Coffee Shop | |
| 38 | 657 South Dearborn Street | | | | | |
| 39 | Seattle, Washington | | | | | |
| 40 | Caravan Inn | ✓ | | 18.09 | Hotel bill - Jim Kittilsby | |
| 41 | 3333 East Van Buren Street | | | | | |
| | Phoenix, Arizona 85008 | | | | | |

SEATTLE PILOTS

ACCOUNTS PAYABLE

March 18, 1970

| | NAME | (1) | AMOUNT (2) | EXPLANATION (3) | (4) |
|---|---|---|---|---|---|
| 1 2 3 4 | Diners Club Post Office Box 54093 Terminal Annex Los Angeles, California 90054 | ✓ | $49.58 | M. Milkes | |
| 5 6 | Dictaphone Corporation P. O. Box 9100 Bridgeport, Conn. 06602 | ✓ | 95.28 | Maintenance agreements | |
| 7 8 9 10 | Dudley, Hardin & Yang Inc. 1921 Minor Avenue Seattle, Washington 98101 | ✓ | 239.84 | Photos | |
| 11 12 13 | Disposal Company 3400 Phinney Avenue North Seattle, Washington 98103 | ✓ | 57.46 | Refuse collection - Jan & | |
| 14 15 16 17 | E & E Meats 1007 Olive Way Seattle, Washington 98101 | ✓ | 22.05 | Dec. charge - coffee shop | |
| 18 19 20 | Elias Sports Bureau Inc. 11 West 42nd Street New York, New York 10036 | ✓ | 385.00 | Stats | |
| 21 22 23 | Epcon Company 1275 Mercer Street Seattle, Washington 98111 | ✓ | 161.98 | Reader board maintenance - Feb. & March | |
| 24 25 26 | The Firefighter P. O. Box 7125 Seattle, Washington 98133 | ✓ | 45.00 | Advertising April through S | |
| 27 28 29 | Frederick & Nelson Flower Shop P. O. 486 Seattle, Washington | ✓ | 13.06 | Flowers - press | |
| 30 31 32 | Friend News Service P. O. Box 1 Blytheville, Arkansas | ✓ | 100.00 | Stats | |
| 33 34 35 | Forde Motion Picture Lab 306 Fairview Avenue North Seattle, Washington 98109 | ✓ | 239.10 | Develop film | |
| 36 37 38 | Gibson Sound Company 501 North 36th Seattle, Washington 98103 | ✓ | 25.00 | Rental of projector | |
| 39 40 41 42 43 | Gill Hotels P. O. Box 4887 Ft. Lauderdale, Florida 33304 | ✓ | 74.16 | Hotel bill for scout Giord | |

| | NAME | (1) | (2) AMOUNT | (3) EXPLANATION | (4) |
|---|---|---|---|---|---|
| 1 | Graybar Electric Company Inc. 1919 Sixth Avenue South Seattle, Washington 98124 | ✓ | $170.25 | Light bulbs, fan | |
| 4 | Globe Ticket Company McKinley Avenue at 60th Street Tacoma, Washington 98411 | ✓ | 442.43 | Opening day tickers & coup book | |
| 7 | Georgian Towers Hotel Ltd. 1450 West Georgia Street Vancouver, B.C., Canada | ✓ | 32.70 | Hotel - H. McCarthy & Edo Vanni | |
| 10 | Thomas Giordano P.O. Box 806 Amityville, New York 11701 | ✓ | 353.95 | Expenses 2/16 - 3/28/70 | |
| 13 | Gordon Goldsberry 4016 Williams LaVerne, California | ✓ | 333.92 | Expenses 2/15 - 3/8/70 | |
| 16 | Grant, Copeland, Chervenak 420 East Howell Seattle, Washington 98122 | ✓ | 3,869.36 | Professional services - Sta Club | |
| 19 | Dr. D. W. Grimes 1125 East 17th Street Santa Ana, California 92701 | ✓ | 25.00 | Bill for Daniel Walton | |
| 22 | H & M Ribbon & Carbon Co. 2301 Second Avenue Seattle, Washington 98121 | ✓ | 32.73 | Carbon Paper | |
| 25 | Robert J. Hansen *To Jim Kittell* *P.O. Box 3154 - Tempe, Arizona* | ✓ | 5,000.00 | Deferred bonus | |
| 27 | Herbert Acosta, Jr. *c/o Jim Kittell* *P.O. Box 3154 - Tempe, Arizona* | ✓ | 1,000.00 | Deferred bonus | |
| 29 | Hanford House Richland, Washington | | 236.11 | Press tour - Bill Sears | |
| 32 | Robert Hawkins 7014 - 58th Avenue N.E. Seattle, Washington 98115 | ✓ | 50.00 | Spot films | |
| 35 | Mike Hegan P. O. Box 3154 Tempe, Arizona | ✓ | 200.00 | Personal appearances | |
| 38 | Hertz Corporation P. O. Box 2856 Grand Central Station New York, New York 10017 | ✓ | 146.45 | Car rentals - M. Milkes & M. Soriano | |
| 41 | Holman, Lewis & MacArthur 2121 South Mill Avenue, Suite 204 | ✓ | 443.51 | Attorneys - Tempe, Ariz. | |

**SEATTLE PILOTS**

**ACCOUNTS PAYABLE**

**March 18, 1970**

| | NAME | (1) | (2) AMOUNT | (3) EXPLANATION | (4) |
|---|---|---|---|---|---|
| 1 | Keener Food Sales | ✓ | $22.34 | Coffee shop - Nov. charge | |
| 2 | 2020 Alaskan Way | | | | |
| 3 | Seattle, Washington 98121 | | | | |
| 4 | John Kennedy | ✓ | 100.00 | Personal appearances | |
| 5 | P. O. Box 3154 | | | | |
| | Tempe, Arizona | | | | |
| 6 | KM Pro Company | ✓ | 2,053.09 | Batting Helmets | |
| 7 | 76 Essex Street | | | | |
| 8 | Boston, Mass. | | | | |
| 9 | | | | | |
| 10 | Frank Keogh - Petty Cash | | 27.19 | Coffee shop | |
| 11 | Seattle, Washington | | | | |
| 12 | | | | | |
| 13 | Karl Kuehl | ✓ | 311.45 | Expenses 2/16 - 3/5 (scout) | |
| 14 | 5845 North Granite Reef Road | | | | |
| 15 | Scottsdale, Arizona 85253 | | | | |
| 16 | Chas. H. Lilly Co. | ✓ | 178.90 | Dolomite & Fertilizer - field | |
| 17 | 5200 Denver Avenue South | | | | |
| 18 | Seattle, Washington | | | | |
| 19 | Lewis, Roca, Beauchamp & Linton | ✓ | 68.00 | Legal services - Tempe | |
| 20 | One Foueteen West Adams Street | | | | |
| | Phoenix, Arizona 85003 | | | | |
| 21 | | | | | |
| 22 | L & H Printing Company | ✓ | 3,339.24 | Per contract 1969 for 1970 | |
| 23 | 68 South Washington Street | | | programs | |
| 24 | Seattle, Washington | | | | |
| 25 | Roland LeBlanc | ✓ | 65.40 | Scouting expenses - 2/22 | |
| 26 | 9342 Randall | | | 3/8/70 | |
| | La Habra, California 90631 | | | | |
| 27 | | | | | |
| 28 | LaBow Haynes | ✓ | 404.25 | Payment on fire policy | |
| 29 | Seattle First National Bank Bldg. | | | | |
| 30 | Seattle, Washington | | | | |
| 31 | L & H Printing Company | ✓ | 298.50 | Group sales brochures | |
| 32 | 68 South Washington | | | | |
| 33 | Seattle, Washington | | | | |
| 34 | Marriott Motor Hotels | ✓ | 27.26 | Dave Bristol | |
| 35 | Courtland & Cain Streets | | | | |
| | Atlanta, Georgia | | | | |
| 36 | | | | | |
| 37 | Met Press | ✓ | 826.60 | Pocket schedules | |
| 38 | 2603 Third Avenue | | | | |
| | Seattle, Washington 98121 | | | | |
| 39 | Tim McAuliffe | ✓ | 746.00 | Uniform undershirts | |
| 40 | 24 Lincoln Street | | | | |
| 41 | Boston, Mass 02111 | ✓ | | | |
| 42 | MacMillan Co. | | 26.75 | Baseball Glory Premium Pkgs | |

| NAME | (1) | AMOUNT (2) | EXPLANATION (3) | (4) |
|------|-----|-----------|-----------------|-----|
| Met Press<br>1155 Valley Street<br>Seattle, Washington | ✓ | $2,309.13 | 4 color strip folders &<br>pass cards | |
| Lewis Matlin<br>c/o Seattle Pilots<br>Seattle, Washington | | 37.73 | Reimburse for Xerox copies<br>of reports | |
| Mobil Oil Company<br>P. O. Box 60403<br>Terminal Annex<br>Los Angeles, California | ✓ | 35.64 | Gas for mower etc. | |
| Lennard Monheimer<br>Seattle Pilots | | 25.45 | Expenses for Feb. | |
| Robert Mavis<br>42 O'Donell Ct.<br>Little Rock, Arkansas | | 386.02 | Scouting exp. 2/16 - 3/7/70 | |
| Harry W. McCarthy<br>Seattle Pilots | ✓ | 29.80 | Expenses 3/1 - 3/15<br>Ticket Mgr. | |
| Major League Scouting Bureau Inc.<br>680 Fifth Avenue<br>New York, New York 10019 | ✓ | 5,000.00 | Scouting service 3/1 - 10/<br>Partial payment due | |
| Robert Mattick<br>14317 N. E. 7th Place<br>Bellevue, Washington 98004 | ✓ | 672.80 | Expenses (scout) 2/16 - 3/ | |
| National Association<br>720 East Broad Street<br>Columbus, Ohio | ✓ | 100.00 | Consideration - contract<br>player Elio Chacon from Tu | |
| Newark Wayne Community Baseball Club<br>P. O. Box 62<br>Newark, New York 14513 | ✓ | 646.64 | Reimbursement for N.Y. unem<br>ployment and bills for Jose<br>Ovca and Wayne Weaver | |
| Naramore, Bain, Brady & Johnson<br>904 - 7th Avenue<br>Seattle, Washington | ✓ | 12,049.02 | 1969 Sicks' Stadium proje | |
| Nelson Roberts<br>625 Main Street<br>San Francisco, California | ✓ | 49.28 | Advertising | |
| Oakland Athletics<br>Oakland-Alameda County Coliseum<br>Oakland, California 94621 | ✓ | 2,000.00 | Salary advance to Lew Kraus | |
| The Olympic Hotel<br>Fourth & Seneca<br>Seattle, Washington | | 208.17 | Hotel bill - Tom Ferguson &<br>charges for M. Milkes | |

51711 00

SEATTLE PILOTS

ACCOUNTS PAYABLE

March 18, 1970

| | NAME | (1) | AMOUNT | EXPLANATION | (4) |
|---|---|---|---|---|---|
| 1 | Olivetti Underwood Corp. | ✓ | $159.80 | Maintenance agreements | |
| 2 | P. O. Box 310, Murray Hill Station | | | | |
| 3 | New York, New York 10016 | | | | |
| 4 | Osborne-Kemper-Thomas Inc. | ✓ | 278.21 | Transportation - coffee mu | |
| 5 | Calendar Hill | | | | |
| 6 | Cincinnati, Ohio 45206 | | | | |
| 7 | | ✓ | | | |
| 8 | Puget Sound Sportswriters | 522 Denny Way | 198.00 | Mid-winter sports banquet | |
| 9 | Seattle, Washington  El Donohoe | | | tickets | |
| 10 | Puget Sound Sportswriters & Casters | | 36.00 | Membership dues - Harry | |
| 11 | Seattle, Washington  522 Denny Way  El Donohoe | | | McCarthy & Edo Vanni | |
| 12 | | | | | |
| 13 | Price Waterhouse | ✓ | 12,000.00 | Professional Services | |
| 14 | 1200 Fifth Avenue | | | | |
| 15 | Seattle, Washington 98101 | | | | |
| 16 | Edgar Pate | ✓ | 89.45 | Expenses - Phoenix | |
| 17 | P. O. Box 3154 | | | | |
| 18 | Tempe, Arizona | | | | |
| 19 | Prim Launderers & Cleaners | ✓ | 66.26 | Laundry service - Dec. Jan | |
| 20 | 1265 Republican | | | Feb. | |
| 21 | Seattle, Washington 98109 | | | | |
| 22 | | ✓ | | | |
| 23 | Pitney Bowes Inc. | | 156.76 | Machine rental | |
| 24 | Walnut & Pacific Streets | | | | |
| 25 | Stamford, Conn. 06904 | | | | |
| 26 | Pacific Northwest Bell | | 5,329.83 | Telephone & Telewriter | |
| 27 | P. O. Box 12480 | | | | |
| 28 | Seattle, Washington | | | | |
| 29 | | | | | |
| 30 | Portland Beavers Inc. | ✓ | 890.72 | Reimbursement for Nelson C. | |
| 31 | P. O. Box 529 | | | Decker's salary | |
| 32 | Portland, Oregon 9/207 | | | | |
| 33 | | ✓ | | | |
| 34 | Popich Sign Company | | 48.07 | Repainting admission signs | |
| 35 | 831 Airport Way South | | | | |
| 36 | Seattle, Washington | | | | |
| 37 | James Piersall | ✓ | 2,233.00 | Promoting bond issue for | |
| 38 | c/o Roanoke Buckskins | | | domed stadium | |
| 39 | 108 West Kirk Avenue | | | | |
| 40 | Roanoke, Virginia | ✓ | | | |
| 41 | Pacific Coast Baseball League | | 81,750.00 | Indemnities due 1970 | |
| 42 | 3320 East Van Buren | | 79,500.00 | Indemnities due April 1971 | |
| | Phoenix, Arizona | | | | |

## SEATTLE PILOTS

### ACCOUNTS PAYABLE

#### March 18, 1970

| | NAME | (1) | AMOUNT (2) | EXPLANATION (3) | (4) |
|---|---|---|---|---|---|
| | Realty Hotels<br>Madison Avenue at 43rd Street<br>New York, New York 10017 | ✓ | $29.88 | Max Soriano | |
| | Randolph Radiological Associates<br>44 Diauto Drive<br>Randolph, Mass. | ✓ | 15.00 | Robert Green bill | |
| | Restaurant Association<br>220 Securities Building<br>Seattle, Washington | ✓ | 30.00 | 1st quarter dues – Frank Keogh | |
| | Rainier District Classified Business<br>Directory<br><br>4118 Rainier Avenue South<br>Seattle, Washington 98118 | ✓ | 51.00 | Advertising | |
| | Spalding Sales Corporation<br>102 – 1st Avenue<br>Chicopee, Mass. 01020 | ✓ | 17,853.48 | Baseballs | |
| | Seattle Visitors Bureau<br>215 Columbia Street<br>Seattle, Washington 98104 | ✓ | 200.00 | Dues for 1970 | |
| | Seattle Fire Department<br>301 Second Avenue South<br>Seattle, Washington 98104 | ✓ | 6.00 | Permits for welding etc. | |
| | Bob Smallwoods U-Rent-It<br>3111 Empire Way South<br>Seattle, Washington 98144 | ✓ | 69.27 | Equipment rental | |
| | Chas. E. Sullivan<br>1900 Fourth Avenue<br>Seattle, Washington 98101 | ✓ | 15.19 | Flowers | |
| | The Seattle Times<br>Fairview North & John Streets<br>Seattle, Washington | ✓ | 379.84 | Advertising | |
| | Sheraton Palace Hotel<br>Rincon Annex, P. O. Box 3233<br>San Francisco, California 94120 | ✓ | 427.34 | M. Soriano, D. Soriano, M. Milkes, Wm. Daley | |
| | Seattle Post-Intelligencer<br>6th & Wall<br>Seattle, Washington | ✓ | 190.50 | Advertising | |
| | Phillip L. Sturholm<br>KING-TV News<br>320 Aurora<br>Seattle, Washington | ✓ | 1,304.85 | Motion picture production | |
| | Sporting News<br>P. O. Box 56<br>St. Louis, Missouri | ✓ | 24.00 | Subscriptions – Wm. Sears & Wm. Daley | |

SEATTLE PILOTS

ACCOUNTS PAYABLE

March 18, 1970

| | NAME | (1) | | | (2) AMOUNT | (3) EXPLANATION | (4) |
|---|---|---|---|---|---|---|---|
| 1 | Stewart Lumber & Hardware Co. 1761 Rainier Avenue South Seattle, Washington | ✓ | | | $1.00 | Supplies - Stadium | |
| 4 | Wes Stock P. O. Box 3154 Tempe, Arizona | ✓ | | | 841.59 | Moving expenses | |
| 7 | Select Credit Card White-Henry-Stuart Building Seattle, Washington | ✓ | | | 77.16 | M. Soriano & Edo Vanni | |
| 10 | E. Lorentzen, City Treasurer Seattle, Washington | ✓ | | | 319.69 | Lights | |
| 13 | E. Lorentzen, City Treasurer Seattle, Washington | | | | 30.90 | Water & Sewer | |
| 16 | Texaco Box 2384, Terminal Annex Los Angeles, California 90054 | ✓ | | | 7.00 | Gas - Truck | |
| 19 | Trick & Murray 300 Westlake North Seattle, Washington | ✓ | | | 34.09 ~~14.21~~ | Office Supply | |
| 22 | Tacoma News Tribune 711 South Helens Avenue Tacoma, Washington | ✓ | | | 103.04 | Advertising | |
| 26 | Travelers Insurance Company 500 Union Street Seattle, Washington | ✓ | | | 2,694.89 | Liability - March payment | |
| 29 | Trade Printery 110 Denny Way Seattle, Washington | ✓ | | | 35.37 | Parking signs | |
| 32 | Tillikum Press 64 Marion Street Seattle, Washington | ✓ | | | 45.20 | Player information cards | |
| 35 | Thunderbird Motel 818 - 112th N.E. Bellevue, Washington 98004 | ✓ | | | 176.13 | Hotel for Robert Mattick | |
| 37 | Utah Mobile Homes 2450 West 5th South Salt Lake City, Utah | ✓ | | | 1,290.00 | Rent for trailers | |
| 41 | United Air Lines P. O. Box 3488, Rincon Annex San Francisco, California | ✓ | | | 3,556.36 | Feb. transportation | |

## SEATTLE PILOTS

### ACCOUNTS PAYABLE

#### March 18, 1970

| | NAME | (1) | AMOUNT (2) | EXPLANATION (3) | (4) |
|---|---|---|---|---|---|
| 1 | Variety Club of Pacific Northwest ✓<br>P. O. Box 9426<br>Seattle, Washington | | $21.00 | Dues - Bill Sears | |
| 4 | Tru-Pitch Inc.<br>P. O. Box 10579<br>St. Petersburg, Fla. 33733 | / | 670.00 | Lease payment for ? pitchin<br>machines to Tempe. Jan. Fe<br>March payments | |
| 7 | Washington Natural Gas Co.<br>P. O. Box 12520<br>Seattle, Washington | ✓ | 53.54 | Utility | |
| 10 | Western Air Lines Inc.<br>P. O. Box 2884, Terminal Annex<br>Los Angeles, California 90054 | ✓ | 11.50 | Shipment to Tempe | |
| 13 | Ward Griffith Co. Inc.<br>757 - 3rd Avenue<br>Everett, Washington | ✓ | 58.24 | Advertising | |
| 16 | William J. Weiss<br>P. O. Box 5061<br>San Mateo, California 94401 | ✓ | 460.00 | Stats | |
| 19 | West Coast Paper Company<br>2203 First Avenue South<br>Seattle, Washington 98134 | | 36.18 | Coffee shop | |
| 22 | Welding Equipment Company<br>4413 Airport Way South<br>Seattle, Washington | / | 9.33 | Supplies | |
| 25 | Washington Plaza Hotel<br>Fifth Avenue at Westlake<br>Seattle, Washington | ✓ | 516.93 | Tom Ferguson & Robert Mattic | |
| 29 | Western Union<br>619 - 2nd Avenue<br>Seattle, Washington | ✓ | 256.15 | Telegrams | |
| 32 | Western Union<br>617 Second Avenue<br>Seattle, Washington | / | 190.89 | Telex | |
| 35 | Xerox<br>P. O. Box 54911<br>Terminal Annex<br>Los Angeles, California | / | 633.71 | Feb. & March | |
| 38 | Xerox<br>P. O. Box 54911<br>Terminal Annex<br>Los Angeles, California | / | 202.38 | Tempe - Feb. & March | |
| | King County Treasurer | ✓ | 31,011.32 | Personal Property taxes | |

SEATTLE PILOTS

ACCOUNTS PAYABLE

March 18, 1970

| | NAME | (1) | | (2) AMOUNT | (3) EXPLANATION | (4) |
|---|---|---|---|---|---|---|
| 1 | Fred Danz Group ✓ | | | $261,875.00 | Due May 1, 1970 | |
| 2 | SRO — 975 John St. | | | | | |
| 3 | Seattle, Washington | | | | | |
| 4 | King County Treasurer | | | 52.40 | Real Estate Taxes - Desimone Property | |
| 5 | | | | | | |
| 6 | City of Seattle | ✓ | | 165,000.00 | Rental for Sicks' Stadium 1970 | |
| 7 | | | | | | |
| 8 | First National Bank of Arizona ✓ | | | 4,028.00 | Payment on Tempe Loan | |
| 9 | Phoenix, Arizona  411 No. Central | | | | | |
| 10 | | | | | | |
| 11 | State of New York | | | 115.60 | Income tax withheld | |
| 12 | Income Tax Bureau | | | | | |
| 13 | State Campus | | | | | |
| 14 | Albany, New York 12226 | | | | | |
| 15 | State of California | | | 50.80 | Dis. Insurance withheld | |
| 16 | Dept. HRD — 800 Capitol Mall  Sacramento, Cal. 95814 | | | | | |
| 17 | State of Missouri | | | 17.32 | Income tax withheld | |
| 18 | Director of Revenue  P.O. Box 999 — Jefferson City, Missouri | | | | | |
| 19 | State of Arizona | | | 102.07 | Income tax withheld | |
| 20 | Income Tax Dept.  Phoenix, Arizona | | | | | |
| 21 | State of Massachusetts | | | 47.21 | Income Tax withheld | |
| 22 | Commonwealth Dept. of  Corporation & Taxation  P.O. Box 7004 — Boston, Mass. 02204 | | | | | |
| 23 | Arkansas Income Tax Bureau | | | 23.76 | Income Tax Withheld | |
| 24 | State of Arkansas  P.O. Box 9941 | | | | | |
| 25 | Little Rock, Arkansas | | | | | |

## LONG TERM INDEBTEDNESS

| | | |
|---|---|---|
| BANK OF CALIFORNIA, N.A. (1% above prime rate) | | $ 3,500,000 |
| SPORTSERVICE, INC. (1/2% above prime rate) | | 2,000,000 |
| PACIFIC COAST LEAGUE (6%) | | |
|    Due 4/30/70 | 75,000 | |
|    Due 4/30/71 | 75,000 | 150,000 |
| SUBORDINATED NOTES PAYABLE TO STOCKHOLDERS (7%) | | 1,000,000 |
| DEMAND NOTES (9 1/2%) | | |
|    Max Soriano | 200,000 | |
|    William Daley | 300,000 | 500,000 |
| AMERICAN LEAGUE OF PROFESSIONAL BASEBALL CLUBS, an unincorporated association   approximately 520 Boylston St., Boston, Mass. | | 250,000 |

$ 7,400,000

1    1. A contract for sale of Debtor's assets to Milwaukee

2  Brewers Baseball Club, Inc.

3    2. Accounts Receivable.

4    3. A chose in action against Fred Danz for breach of

5  contract.

6    4. Ownership of 60% of the outstanding common stock of

7  Pilot Properties, Inc.

Exhibit "B"

AIKEN, ST. LOUIS & SILJEG
ATTORNEYS AT LAW
1375 NORTON BLDG.
SEATTLE, WASH. 98104
MAIN 4-2650

## EXECUTORY CONTRACTS

1.  A lease with the City of Seattle as Lessor, respecting the baseball stadium in Seattle.

2.  A lease agreement with Mobile Trailer Homes, Inc., covering mobile trailors at Seattle.

Exhibit 1

AIKEN, ST. LOUIS & SILJEG
ATTORNEYS AT LAW
1318 NORTON BLDG.
SEATTLE, WASH. 98104
MAIN 4-2650

CERTIFIED COPY OF CORPORATE RESOLUTION

OF

PACIFIC NORTHWEST SPORTS, INC.

"RESOLVED that in the judgment of the Board of Directors, it is desirable and for the best interests of this corporation, its creditors, stockholders and other interested parties, that a petition be filed by this corporation proposing an arrangement under the provisions of Chapter XI of the Bankruptcy Act; and it is further

"RESOLVED that the form of petition under said Chapter XI presented to this meeting be, and the same hereby is, apprvoed and adopted in all respects, and that the Assistant Secretary of this corporation be, and he hereby is, authorized and directed, on behalf of and in the name of this corporation, to execute and verify a petition substantially in such form and to cause the same to be filed with the United States District Court for the Western District of Washington, Northern Division; and it is further

"RESOLVED that the officers of this corporation be, and they are hereby authorized to execute and file all petitions, schedules, lists and other papers and to take any and all action which they may deem necessary or proper in connection to retain and employ all assistance by legal counsel or otherwise which they may deem necessary or proper with a view to the successful termination of such proceedings."

Exhibit 3