

40 North Central Avenue
Phoenix, Arizona 85004-4429
Telephone: (602) 262-5311

Susan M. Freeman, State Bar No. 004199
EMail: SFreeman@LRLaw.com
Randy Papetti, StateBar No. 014586
Email: RPapetti@LRLaw.com
Stefan M. Palys State Bar No. 024752
Email: SPalys@LRLaw.com

Attorneys for PSE Sports & Entertainment LP

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| In Re:<br><br>DEWEY RANCH HOCKEY, LLC,<br><br>COYOTES HOLDINGS, LLC,<br><br>COYOTES HOCKEY, LLC, and<br><br>ARENA MANAGEMENT GROUP, LLC,<br><br>         Debtors,<br><br>This filing Applies to:<br><br> ☒ All Debtors<br> ☐ Specified Debtors | Chapter: 11<br><br>Case No. 2:09-BK-09488-RTBP<br><br>PSE SPORTS & ENTERTAINMENT LP' INITIAL RESPONSE TO MOTION OF NATIONAL HOCKEY LEAGUE FOR A DETERMINATION THAT DEBTOR'S NHL MEMBERSHIP RIGHTS MAY NOT BE TRANSFERRED TO PSE OR AN AFFILIATE THEREOF<br><br>Hearing Date: August 11, 2009<br>Hearing Time: 1:30 p.m. |

## I. Introduction

The NHL argues that, because its Board of Governors has concluded that Mr. Balsillie is "untrustworth[y] in their eyes," PSE's bid is "moot." Accordingly, the NHL says that it has not and will not process PSE's relocation application because it would be a "waste of precious time." The NHL asks the Court to bless this position and declare that PSE's bid is not a Qualified Bid and will not be considered further. Once again, the NHL is trying to prevent any discovery on relocation and a relocation fee in order to preclude any expert from opining on a reasonable fee, and to try and preclude any ruling on the antitrust "as applied" analysis to location of an NHL team in Hamilton.

2081459.2



PSE will provide the Court with more extensive briefing later, when the NHL's motion is set for hearing. In light of the scheduling hearing tomorrow, however, PSE files this initial response now, to advise the Court of its position: (1) there are strong legal arguments in opposition to the NHL's contentions, including that Section 365(f) applies to the simple question of whether PSE is a Qualified Bidder without considering relocation; (2) limited discovery should be allowed on the rationale for the NHL's rejection of PSE, including PSE's and the Debtors' contention that the purported reasons are pretextual and the real goal is to avoid another NHL team anywhere near the Toronto Maple Leafs; (3) limited discovery should be allowed to compile information needed by expert witnesses to opine on an appropriate relocation fee; and (4) a hearing or hearings on transfer of the Coyotes' franchise to PSE, relocation of the team and a relocation fee can be scheduled once the discovery is provided.

**I.     This Bankruptcy Sale is not a Reason to Reject PSE and Avoid Relocation.**

The NHL adamantly objects to PSE acquiring a NHL team through the "side door" of a bankruptcy sale, and contends PSE is untrustworthy to be a NHL owner in part because of PSE's participation in this Court-supervised bankruptcy process. It treats this case as a lawsuit by a party demanding to be made a NHL owner, ignoring the reality of a failing business that owes enormous debts and has never operated profitably. The Coyotes are legitimate debtors; all parties have recognized that their assets must be sold; and given the lack of any actual bids without contingencies and with cash deposits being made in time to avoid foisting another season of losses on the creditors (evidencing the lack of business viability here), relocation bids must be considered too. There are few cities with arena facilities, without a NHL team, and with persons ready, willing and able to buy the team, and thus few sale options.

PSE's bid is quite possibly the only one the Debtors will receive before the upcoming auction. The bid is meritorious enough to be supported by the Debtors, the largest secured creditor, and the Unsecured Creditors' Committee, and the bidder also is

2081459.2



willing to pay the NHL a reasonable relocation fee. Mr. Balsillie is one of the top CEOs in the world, a self-made billionaire, an established philanthropist and an extraordinarily enthusiastic NHL hockey fan. In 2006, the NHL's Board of Governors overwhelmingly approved him as fit to be an NHL owner.

The premise that the Court must, as a legal matter, summarily reject PSE's bid because the NHL subjectively "perceives" Mr. Balsillie to be untrustworthy, especially when the perception is based in significant part on his participation in this bankruptcy process, is not supported by law or the best interests of the estate, let alone mandated by them. Embarrassment or unhappiness of the NHL and some owners of member clubs when Mr. Balsillie declined to proceed with acquisitions he perceived to be too risky as the deals changed is likewise not a basis to reject a bidder at a bankruptcy auction. And while the NHL claims that relocation was not considered in the vote against Mr. Balsillie, all member clubs knew PSE's offer hinged on relocation to Hamilton, and that rejection of Mr. Balsillie would be used to protect that market.

**II.     Section 365(f) Applies, and Section 365(c) does not Require Consent and Certainly Does not Allow Unfettered, Subjective Refusal to Consent.**

The arguments the NHL makes are largely recycled from prior briefs and the Court previously has expressed at least skepticism about several of the arguments. This Court previously noted that Section 365(f) is construed broadly to include even provisions that, while not anti-assignment provisions on their face, significantly restrict a debtor or trustee's ability to sell or assign contractual rights and thus should be viewed as *de facto* anti-assignment provisions. *See In re Dewey Ranch Hockey*, *LLC*, 406 B.R. 30, 36 (Bankr. D. Ariz. 2009) (discussing *In re Crow Winthrop Operating Partnership*, 241 F.3d 1121 (9th Cir. 2001)). Whether viewed as express anti-assignment provisions or as *de facto* provisions, the NHL's consent-before-transfer regime easily falls within the scope of § 365(f). Thus, the NHL cannot (in light of Section 365(f)) declare a default simply based

2081459.2



on an assignment of ownership from the Debtors to PSE (let alone an incurable default).[1] *Dewey Ranch*, 406 B.R. at 36.

The NHL argues that, with respect to *de facto* anti-assignment provisions, courts will not recognize a provision as a *de facto* anti-assignment provision unless it is "so restrictive" as to prevent the bankruptcy estate from realizing the full value of the assets to be sold. (Mot. at 8). The NHL Constitution and By-Laws include *express* anti-assignment provisions, so the exact contours of the *de facto* doctrine are irrelevant. In any event, (a) that is exactly what would happen if the NHL prevailed, and (b) even *de facto* cases do not uphold a refusal to consent to a change in ownership, which is the narrow issue argued by the NHL. *E.g. In re Fleming Cos.*, 499 F.3d 300, 307-08 (3d Cir. 2007) (§ 365(f) did not allow a debtor to excise material, economically significant terms from a contract in order to increase the value of the contract).

In sum, absent an exception, Section 365(f) clearly applies and authorizes the Court to approve a transfer of the Debtors' assets to a Section 363 bidder.

**B.  This Is Not A Personal Services or "Personal Trust and Confidence" Relationship**

Section 365(c) creates an exception from Section 365(f) for personal service contracts and contracts that are essentially personal (as opposed to commercial) in nature. Although the NHL concedes that the contractual rights at issue are not for "personal services," (Motion at 9), the NHL contends that this is one of those "relatively rare situations" where the character and trustworthiness of a potential assignee is so "fundamental" as to be akin to a personal services contract, (*id*. at 11).

The NHL previously made this argument and the Court rejected it.

---

[1] If the NHL were correct about Section 365(a), the Debtors could not assign to *any* bidder, including Mr. Reinsdorf. Because the Ninth Circuit follows the hypothetical test, a finding by this Court that Section 365(a) bars assignment would mean that the Debtors could not *assume* the contract either. *In re Catapault*, 165 F.3d 747, 750 (9th Cir. 1999) (under hypothetical test, if contract cannot be assigned, it cannot be assumed). If unable to assume the NHL governing documents, the Debtors could not operate, and would have to convert this case to a Chapter 7, leaving one less hockey team in the NHL and huge creditor losses.

2081459.2



>      MR. SALERNO: Your Honor, if I may I'd like to move on to § 365 issues. With respect to executory contracts, the Debtor asserts that it can assume and assign executory contracts, and the NHL points out five major objections. . . .
>
>      Number 1, that the NHL agreements are like personal service contracts that you cannot assume and assign without their consent.
>
>      THE COURT: Well, let me, let me put that one aside pretty quickly. **I don't buy that argument.**
>
>      MR. SALERNO: That saves me some time. Thank you. . . .
>
>      THE COURT: It saves me some time, too.

(Dkt 335, 6-9-09 Transcript at 47).

The NHL's argument is not any stronger now than it was two months ago. This is a sale of commercial rights worth over $100 million, not "personal contracts" that are "not in any way commercial." *Compare*, *In re Magness*, 972 F.2d 689, 696 (6th Cir. 1992). While the NHL undoubtedly cares about who its owners are, their financial wherewithal and their character, such considerations are relevant in most substantial contractual relationships, yet they are subordinated under Section 365(f). The primary role of an NHL owner is to run his or her team in competition with other owners, holding only a 1/30th vote on the relatively few joint decisions that NHL member clubs make. Nothing the NHL has cited in its motion should cause the Court to revisit its rejection of the NHL's argument about the "personal" nature of its relationship with its franchisees.

**C.     There Is No Applicable Law that Precludes Assignment**

On pages 11-14 of its motion, the NHL makes arguments that are virtually identical to those the NHL made in its prior brief on relocation issues, (*see* Dkt. 293 at 14), which are in many ways similar to and interwoven with the NHL's "personal contract" arguments. First, the Debtors and PSE are not asking this Court to "rewrite" the NHL Constitution and By-Laws, but rather merely asking the Court to apply Section 365(f). Second, the NHL's extended arguments to the effect that courts defer to the "knowledge

2081459.2



and experience of League executives," and defer to leagues on matters of internal governance (Mot. at 12-14), are beside the point to applicability of Section 365(f).[2] That this matter arises in the context of a sports franchise simply is not as important as the NHL insists. As the Court previously stated: "financially challenged sports team[s] have the same rights and obligations as any business that becomes a debtor in the bankruptcy court." 406 B.R. at 42. That matters of "internal governance" regarding the sport are typically left up to the sport's governing body is irrelevant to whether the Coyotes, a "financially challenged sports team," can invoke Section 365(f) in this bankruptcy proceeding.

Third, the NHL does not allege that any statute governing the NHL and its members precludes assignment of NHL franchise rights or otherwise grants the NHL a right to block a change in ownership. There is no such statute. The NHL does cite cases for the principle that "voluntary associations" generally can decide who to admit as members, which is true, but again, immaterial to the Section 365(c) analysis of whether applicable law precludes assignment of NHL franchise rights. The NHL cites no cases whatsoever supporting the proposition that any controlling law would bar assignment of the Debtor's NHL franchise even if the NHL's Constitution and By-Laws were silent on assignment.

### III. The NHL's Decision <u>Can</u> Be Held to Violate the Duty of Good Faith and Fair Dealing

With respect to the ownership issue (as opposed to the relocation issue), if the Court concludes that the consent-to-transfer provisions in the NHL's Constitution and By-Laws are governed by Section 365(f) with no applicable Section 365(c) exception, the Court does not need to address whether the NHL's rejection of Mr. Balsillie as an owner was or

---

[2] The NHL takes the argument a step further in arguing that the "Court lacks the knowledge and experience of the Board of Governors in determining what makes a good partner in the production, promotion and sale of NHL Hockey." (Motion at 14). It is difficult to take seriously the NHL's implication that the NHL has objectively analyzed and concluded that Mr. Balsillie would not effectively promote and sell NHL hockey. There is zero evidence of any such issues being analyzed by the NHL or its members.

2081459.2



was not unreasonable, based on pretextual grounds or otherwise not in good faith, and the parties can proceed to address the real issue, relocation.

Even if the Court concludes that the NHL could block a transfer to PSE by refusing to consent, the Court will need to determine whether the NHL's decision was contrary to law, including case law applying the implied covenant of good fair dealing and other case law imposing limits on a party's discretion to withhold consent.  The NHL apparently thinks that issue can be decided now on a limited record.  Its arguments are effectively premised on the notion that the NHL's conduct and decision cannot be challenged or scrutinized by the debtors and this Court ("Moyes has no reasonable expectation to sell his club to someone who is not approved by the Board of Governors" (Mot. at 17); Balsillie's "perceived untrustworthiness" is a legitimate business reason to reject him (*Id*. at 19); and this Court should not second-guess the NHL's "legitimate business decision" (*Id*. at 20-21)).

At a minimum, the Court's prior ruling should have made clear to the NHL the Court's view that the NHL's decision would be scrutinized for good faith, commercial reasonableness and compliance with the antitrust laws.  406 B.R. at 36 (NHL is bound by an implied covenant of good faith and fair dealing; it has a duty to exercise its discretion consistent with "the parameters of the duty of good faith;" having approved Mr. Balsillie as an owner in 2006, "it appears to the court that the NHL can not object or withhold its consent to PSE becoming the controlling owner of the Phoenix Coyotes").

2081459.2



Courts routinely hold that franchisors,[3] associations,[4] partnerships,[5] sports leagues,[6] and even sanctioning bodies[7] are not exempt from judicial proceedings to ensure that they have not acted arbitrarily or capriciously, in bad faith, or contrary to other laws of general application, including but not limited to the antitrust laws, especially where important economic interests are implicated. The NHL is no different, especially in light of the important interests of creditors. If the Debtor's ability to transfer ownership to PSE is not

---

[3] *See, e.g.*, *In re R.B.B., Inc.*, 211 F.3d 475, 478 (9th Cir. 2000) (bankruptcy court held that franchisor had unreasonably withheld consent to assignment; Ninth Circuit reversed on other grounds); *Dunfee v. Baskins Robbins, Inc.*, 720 P.2d 1148, 1154 (Mont. 1986) (rejecting Baskin-Robbins' refusal to consent to relocation as unreasonable).

[4] *See, e.g.*, 28 AM. JUR. 2d, *Associations and Clubs* § 28 (2008) ("The general rule that courts will not intervene . . . is subject to exception where the private rights of members are involved, it being generally recognized that judicial aid may be sought in case of actual or threatened invasion of the property or pecuniary rights of members."); *Kokolas v. Johnson City Lodge No. 311, Royal Order of Moose*, 319 N.Y.S.2d 668, 670 (N.Y. Sup. 1971) (plaintiff had a sufficient property interest in remaining a member of a Moose Lodge so that the court would intervene to determine whether a $200 fine was properly imposed by the association).

[5] *See, e.g.*, *In re Schick*, 235 B.R. 318 (Bankr. S.D.N.Y. 1999) (holding that although partner had "absolute discretion" to decide whether to admit new partner, such discretion was tempered by duties of good faith and fairness); *Clancy v. King*, 954 A.2d 1092, 1109 (Md. 2008) (partner would violate fiduciary duties by exercising discretionary right for an improper purpose); *Fitzgerald v. Cantor*, 1999 WL 182571 (Del. Ch. 1999) (partner's right to withhold consent for "any reason" did not mean that partner could act contrary to good faith).

[6] *See, e.g.*, *PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001) (questioning whether PGA rules ran afoul of the American with Disabilities Act because the rules prohibited disabled golfers from using carts, and noting that PGA had abandoned its argument that it was exempt from modification of its rules as a private association); *NHL Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462 (6th Cir. 2005) (evaluating whether NHL's age restrictions were legal); *ESPN, Inc. v. Office of the Comm'r of Baseball*, 76 F. Supp. 2d 383, 408 (S.D.N.Y. 1999) (holding that evidence of MLB's real reason for withholding consent was relevant and admissible); *NHL v. NHL Players Ass'n*, 789 F. Supp. 288 (Minn. 1992) (NHL sought declaratory judgment that certain of its rules did not violate antitrust laws); *Koszela v. NASCAR*, 646 F.2d 749, 754 (2d Cir. 1981) ("[T]he policies supporting noninterference are considerably weaker where the organization is 'primarily a business run for profit'").

[7] *See, e.g.*, *Schulz v. U.S. Boxing Ass'n*, 105 F.3d 127 (3d Cir. 1997) (affirming grant of preliminary injunction in suit by plaintiff boxer who lost fight against competing boxer later found to have used steroids; court's injunction required sanctioning body to disqualify boxer who had used steroids); *Hatley v. Am. Quarter Horse Ass'n*, 552 F.2d 646, 655 (5th Cir. 1977) (courts would resolve whether horse had "too much white" on it per association rules where the result involved substantial economic sums and association failed to provide adequate procedures before making its decision); *Gulf So. Conf. v. Boyd*, 369 So. 2d 553, 557 (Ala. 1979) (questioning whether case law involving voluntary associations should be applied to the NCAA given its dominance).

2081459.2



resolved under Section 365(f), there will need to be a hearing on the legitimacy of the NHL's decision rejecting Mr. Balsillie after the NHL provides requested discovery on that subject. What information that is already in the record, however, makes very clear that there is a bona fide dispute about the NHL's decision to reject Mr. Balsillie.

### IV. Discovery Should Go Forward on the NHL's Rejection of Mr. Balsillie and Relocation and Relocation Fee Issues.

The Debtors and PSE need discovery relating to whether the NHL's treatment of Mr. Balsillie's ownership Transfer Application and the Debtors'/PSE's Relocation Application (the "Applications") has been consistent with the NHL's duties of good faith and fair dealing (among other things), or not (such as whether the stated basis for the rejections is merely pretextual to protection of the territorial veto in the League's Constitution). The Debtors and PSE have already requested limited deposition and document discovery concerning these subjects (requests which are on the Court's agenda for tomorrow). In light of the NHL's Motion, filed after the discovery requests, some modest additional deposition and document discovery is warranted.[8]

First, depositions of the following individuals are appropriate: Craig Leipold (current owner of the Minnesota Wild and former owner of the Nashville Predators); Jeremy M. Jacobs (owner of the Boston Bruins and Chairman of the NHL Board of Governors); and Richard A. Peddie (president and CEO of the owner of the Toronto Maple Leafs). The testimony of Messrs. Leipold and Jacobs has been affirmatively put at issue by their declarations in support of the NHL's Motion. Mr. Peddie's testimony is relevant to the pretextual character of the rejection of Mr. Balsillie, information going to the heart of the NHL's Motion. Debtors and PSE will conduct these depositions at a time and place of the deponents' convenience, within the confines of the discovery schedule to be set by the Court.

---

[8] PSE is entitled to participate in discovery bearing on its bid. *E.g. In re Summit Corp.*, 891 F.2d 1, 5 (1st Cir. 1989) (bidder was a "party in interest" for Rule 2004 purposes and was entitled to discovery).

2081459.2



1       Second, Debtors and PSE will want the deponents to produce all documents in their
2 possession and/or control relating to the Applications and with respect to the other
3 Applicants who were considered by the NHL in connection with the proposed sale of the
4 Coyotes. Such documents should be produced no later than two days prior to their
5 respective depositions, to enable the deposition questioning to be expeditious and to the
6 point.
7       Third, PSE along with the Debtors will seek a limited number of additional
8 documents: (1) an unredacted version of the July 27, 2009 Memorandum sent to the NHL
9 Executive Committee and Board of Governors regarding "Historical Facts and Materials
10 Relevant to the Applications of Jerry Reinsdorf, Jim Balsillie, and Anthony LeBlanc for
11 the Transfer of Ownership of the Phoenix Coyotes"; (2) the applications and related
12 submissions of Messrs. Reinsdorf and LeBlanc to become owners of the Coyotes (except
13 for financial information, which PSE concedes is appropriately excluded from its view as a
14 competitive bidder); and (3) all documents related to the NHL's investigations of Messrs.
15 Reinsdorf's and LeBlanc's qualifications to serve as NHL owners along with the
16 documents regarding the investigation of Mr. Balsillie. As with the previous request, all
17 of these documents can be produced at minimal burden to the NHL, can be held in
18 confidence, and are directly relevant to the NHL's Motion and the critical issue of whether
19 the NHL has treated Mr. Balsillie's Applications in a discriminatory fashion. Debtors and
20 PSE request that such documents be produced within the same timeframe as the previously
21 requested documents.
22       Finally, PSE urges that production of documents and depositions relevant to the
23 issue of relocation to Hamilton and a relocation fee not be postponed until after a hearing
24 on whether Mr. Balsillie is a Qualified Bidder. Expert testimony on these subjects will be
25 needed, and experts need facts to render their opinions and time to review the facts. This
26 Court previously stated that such discovery would be allowed before the NHL's deadline
27 to provide its decision on the Relocation Application and relocation fee. (Dkt 364, 6-22-09
28

2081459.2



Transcript at 111). The NHL appears to be trying again to delay divulging the facts needed for expert opinions to be prepared. PSE urges that the Court reiterate that discovery now is appropriate.

Once the discovery is provided, a hearing or hearings can be scheduled on Mr. Balsillie/PSE as a Qualified Bidder, and on relocation issues, including a relocation fee.

Respectfully submitted this 10th day of August, 2009.

LEWIS AND ROCA LLP

By /s/ S.M. Freeman (004199)
Susan M. Freeman
Attorneys for PSE Sports & Entertainment LP

2081459.2