# Executive Summary of Revised NHL Bid to Acquire Phoenix Coyotes

At a status hearing held on October 26, 2009, the National Hockey League (the "NHL") revised and clarified the terms of its bid to acquire the Phoenix Coyotes. Set forth below is an executive summary of the revised bid. A copy of a revised Asset Purchase Agreement (the "APA"), among Team Newco, LLC and Arena Newco, LLC ("Buyers") and Coyotes Hockey, LLC and Arena Management Group, LLC ("Sellers"), together with the related schedules and exhibits, are attached as Exhibits 1A, 1B and 1C hereto, respectively. Redlined versions of the APA, the schedules and the exhibits, showing changes from the September 15, 2009 drafts of the APA and the schedules and the most recent prior drafts of the exhibits, are attached as Exhibits 2A, 2B and 2C, respectively.

    a. *Overview of NHL Bid*. The NHL's Revised Bid contemplates that Buyers will:

      i. assume or pay all of Sellers' prepetition and postpetition secured debt;

      ii. assume substantially all executory contracts relating to the operation of the Team;

      iii. enter into a Transition Services Agreement with Sellers pursuant to which Sellers will continue to provide the goods and services currently provided for pursuant to the contracts set forth on Schedule 2.14(a) (the "Glendale Contracts") in return for Buyer's reimbursement of Sellers' costs thereunder;

      iv. enter into a Partial Lease Assignment Agreement with Sellers to continue to play games in the Jobing.Com Arena through at least the 2009-2010 season in return for Buyers' reimbursement of Sellers' costs under the AMULA for that period and use commercially reasonable efforts to enter into a modified long-term AMULA.[1]

      v. Cure Costs, if any, under the Assumed Contracts or those Glendale Contracts, if any, which become Assumed Contracts in the future, to the extent that they have not been paid as described in paragraph (c) below, will be the responsibility of Sellers. Ongoing payments in accordance with Assumed Agreements, Glendale Contracts and the AMULA do not reduce the purchase price.

---

[1] Buyers will, through December 31, 2009, and may thereafter, accept a Glendale bid which covers its costs notwithstanding their receipt of a relocation bid which might generate a relocation fee and/or higher Net Profit. Buyers have also agreed that Sellers will not reject any of the Glendale Contracts or the AMULA until June 30, 2010 (unless they are earlier assumed or consensually modified). The City has stated that it will consent to an extension of the date by which Sellers would be required to reject the AMULA until June 30, 2010.

b. *Consideration*. The consideration to be paid by Buyers for the Purchased Assets and assumed liabilities will be approximately $128.4 million and will include a substantial cash payment to Sellers as follows:

  i. assumption of obligation to pay and payment or other satisfaction (if agreed by SOF) of all indebtedness owed by Sellers to SOF Investments, L.P., Donatello Investments, LLC and White Tip Investments, LLC (approximately $80,747,000, including accrued but unpaid interest and legal fees);

  ii. assumption of all prepetition and DIP secured indebtedness owed by the Sellers to the NHL as of the Closing (estimated at approximately $36,332,000, including interest and related costs through November 2, 2009 and the $2 million referred to in paragraph (d) below);

  iii. cash in the amount of approximately $11,303,000; and

  iv. if the Team is resold prior to the second anniversary of the Closing, an additional amount of cash, payable within 10 business days following consummation of such sale, equal to 100% of the Net Profit as defined in the APA, if any, on such resale.

A one page worksheet showing the estimated payments is included at the end of this summary.[2]

c. *Purchase of Allowable Unsecured Claims.* Buyers will use their commercially reasonable efforts to purchase approximately $11.6 million, representing substantially all (by number), of Sellers' prepetition unsecured claims (which will also effectively eliminate most if not all cure costs with respect to executory contracts being assumed and those that may potentially be assumed in the future). Once purchased by Buyers, the claims will be subordinated in right of payment from the Debtors' estates to all other prepetition unsecured claims, other than claims of Jerry Moyes, his family members and trusts and their affiliates. Buyers will pay any difference between the approximately $11.6 million and the amount actually paid to purchase any such claims to Sellers' estates within 5 business days after May 1, 2010.[3]

---

[2] The parties intend to close the transaction on November 2, 2009. The amounts shown with respect to the NHL Obligations and the cash paid to the Debtors' estates assume that the Closing will occur before further postpetition funding is needed from the NHL.

[3] Buyers will offer to purchase the prepetition claims of creditors set forth on Schedules 2.6(a)(v) and 2.8(a)(v) for the amounts set forth next to such claim. To receive such payment, each claim holder will be required to execute and deliver to the Claims Agent, at Closing or within 60 days thereafter, an assignment form which assigns to one of the Buyers the prepetition claim of such holder represented by the claim. With respect to any amounts noted with an asterisk on such schedules, if Buyers and the holder agree on the amounts set forth on

*(cont'd)*

d. *Cash for Professional Fees under DIP Loan*. Although the DIP Loan has not yet been authorized by this Court, the NHL has committed to provide $2 million in DIP funds to the Debtors' estates prior to the Closing for the payment of professional fees and expenses. Accordingly, in addition to the cash consideration paid to Sellers as part of the consideration for the Purchased Assets, the Debtors' estates will have an additional $2 million for administrative expenses.

e. *Reduction of Moyes Guaranty*. The NHL has also agreed at the request of the Creditors' Committee to amend the Guaranty issued by Jerry Moyes and family members and trusts to reduce the maximum cap amount under the Guaranty from $30 million to $15 million. Such amendment to the Guaranty is conditioned upon the Closing under the APA. The NHL, on the one hand, and the Moyes parties, on the other hand, reserve all rights, claims, causes of action and defenses with respect to the Guaranty.

---

*(cont'd from previous page)*
such schedules, or if Buyers, the holder and the Creditors' Committee agree on a different amount, Buyers shall purchase the claim at such agreed amount.

# Summary of Financial Consideration in NHL Offer

Purchase Price:

Assumed Liabilities per Section 3.1(a):

| | |
|---|---:|
| Secured Creditors: | |
|     SOF Investments | $80,747,121 |
|     NHL DIP loan, including $2 million professional fee carveout under DIP facility | 36,331,600 |
| Cash per Section 3.1(b): | 11,303,400 |
| **TOTAL PURCHASE PRICE** | **$128,382,121** |