Thomas J. Salerno (AZ Bar No. 007492) tsalerno@ssd.com
Jordan A. Kroop (AZ Bar No. 018825) jkroop@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
Two Renaissance Squire, Suite 2700
40 North Central Avenue
Phoenix, Arizona 85004-4498
(602) 528-4000
Attorneys for Debtors

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>COYOTES HOCKEY, LLC,<br><br>       Debtor. | Chapter 11<br>Case No. 2:09-bk-09488-RTBP<br>(Jointly Administered)<br><br>**AMENDED PLAN**<br>Dated May 10, 2010 |

Coyotes Hockey, LLC, a debtor-in-possession in these jointly-administered Chapter 11 cases, proposes this plan for the resolution of its outstanding claims and equity interests. (This plan supersedes and replaces the previous plan dated December 9, 2009.)

All holders of Claims against, and Equity Interests in, the Debtor are encouraged to read the Plan, the Disclosure Statement, and the related materials in their entirety.

Subject to the restrictions on modifications set forth in Bankruptcy Code § 1127, Bankruptcy Rule 3019, and Section 11.01 of the Plan, the Debtor may amend the Plan one or more times before its substantial consummation.

# ARTICLE 1.
## DEFINITIONS AND RULES OF INTERPRETATION

All capitalized terms used in the Plan are either defined in this Article 1, the Bankruptcy Code, or the Bankruptcy Rules. Whenever the context requires, terms include the plural as well as the singular and the masculine gender as well as the feminine gender. "Including" is inclusive and not exclusive, as in "including, without limitation."

As used in the Plan, the following terms have the following meanings:

**1.01. Administrative Claim.** A Claim for any expense Allowed under Bankruptcy Code §§ 503(b), 507(b), or 546(c)(2) and entitled to priority under Bankruptcy Code § 507(a)(2), including: (a) fees payable under 28 U.S.C. § 1930; (b) actual and necessary costs and expenses incurred in the ordinary course of the Debtor's business; (c) actual and necessary costs and expenses of preserving the Estate or administering the Chapter 11 Case; and (d) all Professional Fee Claims to the extent Allowed by Final Order under Bankruptcy Code §§ 330, 331, or 503.

**1.02. Administrative Claims Bar Date.** The first Business Day 30 days after the Confirmation Date.

**1.03. Allowed.** (a) A Claim that has been allowed by a Final Order or (b) with respect to any Claim against, or Equity Interest in, the Debtor: (i) (A) proof of which, request for payment of which, or application for allowance of which, was filed or deemed filed with the Bankruptcy Court on or before the Bar Date, the Administrative Claims Bar Date, the Professional Fee Bar Date, or the Rejection Damages Bar Date, as applicable, for filing proofs of claim or equity interest or requests for payment for Claims of that type against the Debtor or other applicable date established by order of the Bankruptcy Court, even if that date is after the Bar Date, the Administrative Claims Bar Date, the Professional Fee Bar Date, or the Rejection Damages Bar Date, as applicable; or (B) a Claim or Equity Interest that is allowed by the Debtor; (ii) listed as undisputed, liquidated, and non-contingent in the Schedules and as to which no objection to its allowance or motion to estimate for purposes of allowance has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court; and (iii) in each instance, a Claim or Equity Interest as to which no objection to its allowance or motion to estimate for purposes of allowance has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or, as to which any such objection or motion has been interposed, to the extent allowed by a Final Order. The term "Allowed," when used to modify a reference in the Plan to any Claim, Equity Interest, Class of Claims, or Class of Equity Interests, means a Claim or Equity Interest (or any Claim or Equity Interest in any Class) that is so allowed (*e.g.,* an "Allowed Secured Claim" is a Claim that has been allowed to the extent of the value, as determined by the Bankruptcy Court under Bankruptcy Code § 506(a), of any interest in property of the Estate securing such Claim).

**1.04. Asset Purchase Agreement.** The *Asset Purchase Agreement* dated as of November 2, 2009, among Coyotes Hockey, LLC, a Delaware limited liability company, and Arena Management Group, LLC, a Delaware limited liability company as "Sellers" and Coyotes Newco, LLC, a Delaware limited liability company, and Arena Newco, LLC, a Delaware limited

liability company, as "Buyers," under which, among other things, the Buyers (Affiliates of the NHL) purchased substantially all the Debtor's assets under Bankruptcy Code § 363.

**1.05. Avoidance Actions.** All statutory causes of action preserved for the Estate under Bankruptcy Code §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, and 553 that the Estate may have against any Person, including those listed in Exhibit A to the Plan. Failure to list an Avoidance Action in the Plan does not constitute a waiver or release of that Avoidance Action.

**1.06. Bankruptcy Code.** Title 11 of the United States Code as of the Petition Date.

**1.07. Bankruptcy Court.** The United States District Court for the District of Arizona and, to the extent of any reference under 28 U.S.C. § 157, the bankruptcy unit of the District Court under 28 U.S.C. § 151.

**1.08. Bankruptcy Rules.** Collectively, the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075 and any Local Rules of the Bankruptcy Court applicable to the Chapter 11 Case.

**1.09. Ballots.** The ballots distributed with the Disclosure Statement to holders of Claims in Classes 2 and 3 entitled to vote on the Plan on which acceptances or rejections of the Plan are indicated.

**1.10. Bar Date.** The date fixed by the Bankruptcy Court by which Persons asserting a Claim against the Debtor (*except* Administrative Claims, Professional Fee Claims, and Rejection Damages Claims) are required to file a proof of claim or equity interest or a request for payment or be forever barred from asserting a Claim against the Debtor or its property, from voting on the Plan, and from sharing in distributions under the Plan.

**1.11. Benefit Plans.** All benefit plans of whatever type or nature that the Debtor provided to its employees, whether now in existence or previously terminated, including all 401(k) plans, medical insurance plans, accidental death and dismemberment plans, disability plans, tuition reimbursement plans, dental insurance plans, and life insurance plans, and any rights of employees to extended coverage arising from any Benefit Plan whether under the terms of the Benefit Plans or under applicable law.

**1.12. Business Day.** Any day other than a Saturday, Sunday, or legal holiday (as defined in Bankruptcy Rule 9006).

**1.13. Cash.** Currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately available funds.

**1.14. Chapter 11 Case.** The case under Chapter 11 of the Bankruptcy Code for the Debtor pending before the Bankruptcy Court under Case No. 2:09-bk-09488-RTBP.

**1.15. Class.** A category consisting of holders of Claims or Equity Interests substantially similar in nature to the Claims or Equity Interests of other holders placed in that category, as designated in Article 3 of the Plan.

**1.16. Collateral.** Any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, the Lien not avoidable or invalid under the Bankruptcy Code or applicable state law.

**1.17. Committee.** The official joint committee of creditors appointed in the Chapter 11 Case under Bankruptcy Code § 1102.

**1.18. Confirmation Date.** The date the Bankruptcy Court enters the Confirmation Order.

**1.19. Confirmation Hearing.** The hearing held by the Bankruptcy Court to consider confirmation of the Plan under Bankruptcy Code § 1129.

**1.20. Confirmation Order.** The order of the Bankruptcy Court confirming the Plan in accordance with the Bankruptcy Code. The Confirmation Order need not necessarily be a Final Order.

**1.21. Contingent Claim.** Any Claim for which a proof of claim has been filed with the Bankruptcy Court that: (a) was not filed in a fixed amount, or has not accrued and depends on a future event that has not occurred and may never occur; and (b) has not been Allowed on or before the Confirmation Date.

**1.22. Cure.** The payment on the Effective Date of Cash or other property as a condition to the assumption or assumption and assignment by a Debtor of an executory contract or unexpired lease of nonresidential real property, in accordance with Bankruptcy Code § 365(b).

**1.23. D&O Policy.** Any directors and officers liability insurance policy or any applicable errors and omissions policy applicable to the Debtor's directors and officers.

**1.24. Debtor.** Coyotes Hockey, LLC, a Delaware limited liability company.

**1.25. Disallowed.** In reference to a Claim, a Claim or any portion of a Claim that has been disallowed or withdrawn by Final Order.

**1.26. Disclosure Statement.** The written disclosure statement relating to the Plan (including all exhibits and schedules) in the form approved by the Bankruptcy Court under Bankruptcy Code § 1125 and Bankruptcy Rule 3017.

**1.27. Disputed.** With respect to Claims or Equity Interests, any Claim or Equity Interest: (a) listed in the Schedules as unliquidated, disputed, or contingent, or as to which the Debtor or any other party-in-interest has (i) interposed a timely objection or request for estimation, or (ii) sought to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, in each instance where such listing, objection, request for estimation, or action to limit recovery has not been withdrawn or determined by a Final Order; or (b) that is a Contingent Claim.

**1.28. Distribution Record Date.** The date, established in the Confirmation Order, by which the identities of the holders of Claims and Equity Interests are determined for purposes of entitlement to receive distributions under the Plan.

**1.29. Effective Date.** The first Business Day that is eleven days after the Confirmation Date and on which (a) no stay of the Confirmation Order is in effect and (b) all conditions to effectiveness set forth in Section 8.02 of the Plan have been satisfied or waived in accordance with the Plan.

**1.30. Equity Interest.** Any equity interest in the Debtor represented by any certificated or uncertificated membership interest issued to any Person before the Effective Date, and any warrants, options, or rights to purchase any equity interest.

**1.31. Estate.** The estate for the Debtor created under Bankruptcy Code § 541.

**1.32. Final Order.** An order or judgment of the Bankruptcy Court: (a) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired, or as to which any right to appeal, petition for certiorari, reargue, or rehear has been waived in writing in form and substance satisfactory to the Debtor; and (b) if an appeal, writ of certiorari, or reargument or rehearing has been sought, as to which the highest court to which the order was appealed, or certiorari, reargument or rehearing was sought, has determined or denied the appeal, writ of certiorari, reargument, or rehearing, and the time to take any further appeal, petition for writ of certiorari, or move for reargument or rehearing has expired; but the filing of a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, with respect to the order does not prevent the order from being a Final Order.

**1.33. General Unsecured Claim.** Any Claim against the Debtor existing as of the Petition Date including a Rejection Claim but excluding a Secured Claim, an Administrative Claim, a Priority Tax Claim, or a Priority Claim.

**1.34. Gretzky Claims.** The General Unsecured Claims held by Wayne Gretzky.

**1.35. IRS.** The Internal Revenue Service.

**1.36. Liquidation Trust.** A grantor trust created under Arizona law into which certain property of the Estate will vest in accordance with the Plan as of the Effective Date, to be administered by the Liquidation Trustee for the benefit of holders of Allowed General Unsecured Claims.

**1.37. Liquidation Trustee.** Michael Carmel, the trustee of the Liquidation Trust as of the Effective Date.

**1.38. Litigation Claims.** All rights, claims, torts, liens, actions, causes of action, avoiding powers, proceedings, debts, contracts, judgments, offsets, damages, and demands in law or in equity, including Avoidance Actions, whether known or unknown, contingent or otherwise, that an Estate has brought or may have against any Person, including those listed in Exhibit A to the Plan. Failure to list a Litigation Claim in the Plan does not constitute a waiver or release of that Litigation Claim.

**1.39. Maximum Amount.** With respect to any Claim that is not an Allowed Claim: (a) the amount to which the Debtor or the Liquidation Trust and the holder of the Claim agree; or (b) any amount the Bankruptcy Court estimates or determines under Bankruptcy Code § 502(c); or (c) absent any agreement, estimation, or determination, the amount set forth in the proof of claim or application for payment filed by the holder of the Claim, or, if no amount is so set forth,

the amount set forth in the Schedules for the Claim, or, if no amount is so set forth, the amount the Debtor or the Liquidation Trust estimates in its good faith discretion.

**1.40. Moyes Claims.** General Unsecured Claims held by one or more of Jerry C. Moyes, Vickie Moyes, The Jerry and Vickie Moyes Family Trust, or any of their Affiliates.

**1.41. NHL.** Collectively, the National Hockey League and the "Buyers" under the Asset Purchase Agreement.

**1.42. NHL Subordinated Claims.** All General Unsecured Claims purchased by the NHL under Section 8.4 of the Asset Purchase Agreement as of the Effective Date.

**1.43. Non-Insider Claims.** All General Unsecured Claims other than the NHL Subordinated Claims, the Moyes Claims, and the Gretzky Claims.

**1.44. Petition Date.** May 5, 2009, the date on which the Debtor filed its voluntary Chapter 11 petition in the Bankruptcy Court.

**1.45. Plan.** This plan of reorganization, either in its present form or as it may be amended, supplemented, or modified from time to time, including, except where the context otherwise requires, all its annexed exhibits.

**1.46. Priority Claim.** Any Claim (or portion of a Claim) entitled to priority under Bankruptcy Code § 507(a) other than Priority Tax Claims and Administrative Claims.

**1.47. Priority Tax Claim.** Any Claim of a Governmental Unit entitled to priority under Bankruptcy Code § 507(a)(8).

**1.48. Professional.** A Person: (a) employed in the Chapter 11 Case in accordance with an order of the Bankruptcy Court under Bankruptcy Code §§ 327, 328, 363, or 1103 and to be compensated for services under Bankruptcy Code §§ 327, 328, 329, 330, and 331 or order of the Bankruptcy Court; or (b) for whom compensation and reimbursement has been Allowed by a Final Order under Bankruptcy Code § 503(b).

**1.49. Professional Fee Bar Date.** The first Business Day that is 30 days after the Confirmation Date.

**1.50. Professional Fee Claim.** An Administrative Claim for compensation and reimbursement of expenses of a Professional rendered or incurred before the Effective Date submitted in accordance with Bankruptcy Code §§ 328, 330, 331, or 503(b).

**1.51. Pro Rata.** A proportionate share, such that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of that Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in that Class to the amount of all Allowed Claims in that Class.

**1.52. Rejection Claim.** A Claim arising from the Debtor's rejection of an executory contract or unexpired lease either during the Chapter 11 Case or under the Plan other than a Claim for

unpaid rent or contract payments arising under a rejected executory contract or unexpired lease after the Petition Date and before the effective date of the rejection of that contract or lease.

**1.53. Schedules.** The schedules of assets and liabilities, the list of holders of interests, and the statements of financial affairs filed by the Debtor under Bankruptcy Code § 521 and Bankruptcy Rule 1007, as the schedules, list, and statements may have been or may be supplemented or amended from time to time.

**1.54. Secured Claim.** Any Claim (a) listed in the Schedules as a liquidated, noncontingent, and undisputed secured Claim, or (b) reflected in a proof of claim as a secured Claim, secured by a Lien on Collateral to the extent of the value of the Collateral, as determined in accordance with Bankruptcy Code § 506(a), or, if the Claim is subject to setoff under Bankruptcy Code § 553, net of the setoff.

**1.55. Secured Tax Claim.** Any Claim of any governmental unit or associated political subdivision, including principal taxes and accrued and unpaid interest under applicable law from the Petition Date, that is secured by a Lien on property of an Estate by operation of applicable law including every Claim for unpaid real, personal property, or *ad valorem* taxes.

## ARTICLE 2.
## TREATMENT OF UNCLASSIFIED CLAIMS

**2.01. Unclassified Claims.** As provided in Bankruptcy Code § 1123(a)(1), Administrative Claims and Priority Tax Claims are not classified for purposes of voting on, or receiving distributions under, the Plan. Holders of Administrative Claims and Priority Tax Claims are not entitled to vote on the Plan but, rather, are treated separately in accordance with Sections 2.02 and 2.03 of the Plan and under Bankruptcy Code § 1129(a)(9)(A).

**2.02. Allowed Administrative Claims.**

    **a. Generally.** Each Allowed Administrative Claim (other than a Professional Fee Claim) will be paid in full in Cash (or otherwise satisfied in accordance with its terms) on the latest of: (a) the Effective Date, or as soon after that date as feasible; (b) any date the Bankruptcy Court may fix, or as soon after that date as feasible; (c) 30 days after the Claim is Allowed; and (d) any date on which the holder of the Claim and the Debtor or the Liquidation Trust agree.

    **b. Requests for Payment.** All requests for payment of an Administrative Claim (other than a Professional Fee Claim) must be served on the Liquidation Trust and filed with the Bankruptcy Court no later than the Administrative Claims Bar Date. Any holder of an Administrative Claim (other than a Professional Fee Claim) that fails to file and serve its request by the Administrative Claims Bar Date will be forever barred from asserting its Administrative Claim against the Debtor or the Liquidation Trust.

**2.03. Allowed Priority Tax Claims.** Any Allowed Priority Tax Claim will be paid in full in Cash on the latest of: (a) the Effective Date (or as soon after that date as feasible); and (b) 30 days after the Claim is Allowed. The Liquidation Trust may elect to pay any Allowed Priority Tax Claim through regular installment payments in Cash of a total value, as of the Effective Date, equal to the Allowed amount of the Claim, over a period ending not later than five years

after the Petition Date, and in a manner not less favorable than the most favored General Unsecured Claim provided for by the Plan. If the Liquidation Trust so elects, the installment payments will be made in equal quarterly installments of principal plus interest, at a rate determined under applicable nonbankruptcy law, on the unpaid portion of the Allowed Priority Tax Claim accruing from the Effective Date. The first payment will be made on the latest of: (a) the Effective Date, or as soon after that date as feasible; (b) 30 days after the Claim is Allowed, or as soon after than date as feasible; and (c) another date on which the holder of the Claim and the Liquidation Trust agree. The Liquidation Trust retains the right to prepay any Allowed Priority Tax Claim, or any remaining balance of such a Claim, in full or in part, at any time on or after the Effective Date without premium or penalty.

**2.04. Professional Fee Claims.** Each Allowed Professional Fee Claim will be paid in full in Cash on the latest of: (a) three days after the Professional Fee Claim is Allowed; and (b) another date on which the holder of the Professional Fee Claim and the Liquidation Trust agree. Each Person seeking an award by the Bankruptcy Court of Professional Fees must file with the Bankruptcy Court and serve on the Liquidation Trust its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date by the Professional Fee Bar Date.

**2.05. Post-Confirmation Date Professional Fees.** All claims of Professionals for services rendered or expenses incurred after the Confirmation Date in connection with the Chapter 11 Case and the Plan including those relating to consummation of the Plan, any appeal of the Confirmation Order, the preparation, filing, and review of Professional Fee Claims, the prosecution of Avoidance Actions and Litigation Claims, and the resolution of Disputed Claims, will be paid by the Liquidation Trust on receipt of an invoice, or on other terms on which the Liquidation Trust and the Professional agree, without the need for further Bankruptcy Court authorization or entry of a Final Order.

**ARTICLE 3.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**3.01. Class 1—Priority Claims.** Class 1 consists of all Priority Claims other than Priority Tax Claims.

      **a. Impairment and Voting.** Class 1 is unimpaired by the Plan. All holders of Allowed Priority Claims are deemed to have accepted the Plan and will not be solicited to vote on the Plan.

      **b. Treatment.** Each holder of an Allowed Priority Claim other than a Priority Tax Claim will receive Cash in an amount equal to its Allowed Priority Claim on the later of: (i) the Effective Date, or as soon after that date as feasible; and (ii) 30 days after the Priority Claim is Allowed; unless, before the later of those two dates, the holder of the Claim and the Liquidation Trust agree in writing to a different date.

**3.02. Class 2—Unsecured Claims.** Class 2 consists of all General Unsecured Claims, including Rejection Claims, other than NHL Subordinated Claims.

**a. Impairment and Voting.** Class 2 is impaired by the Plan. All holders of Class 2 Claims are entitled to vote and will be solicited to vote on the Plan.

**b. Treatment.** Each holder of an Allowed Class 2 Claim will receive, in full and final satisfaction of its Allowed Class 2 Claim, a Pro Rata beneficial interest in the Liquidation Trust.

**3.03. Class 3—NHL Subordinated Claims.** Class 3 consists of all NHL Subordinated Claims.

**a. Impairment and Voting.** Class 3 is impaired by the Plan. The NHL is entitled to vote and will be solicited to vote on the Plan. The NHL is entitled to vote each of its Claims in Class 3 separately.

**b. Treatment.** The NHL will receive, on account of and in full and final satisfaction of each of its Allowed Class 3 Claims, a Pro Rata beneficial interest in the Liquidation Trust. The NHL agreed under the Asset Purchase Agreement to voluntarily subordinate all NHL Subordinated Claims to all Non-Insider Claims. Accordingly, all distributions from the Liquidation Trust on account of the beneficial interests attributable to the NHL Subordinated Claims are automatically redistributed Pro Rata to the beneficial interests attributable to all Non-Insider Claims until the latter beneficial interests have received distributions totaling the amount of all Allowed Non-Insider Claims, after which the beneficial interests attributable to the NHL Subordinated Claims and the beneficial interests attributable to the Moyes Claims and the Gretzky Claims receive all distributions Pro Rata.

**c. Example.** Assume the following Allowed Claims amounts:

| Non-Insider Claims | Moyes Claims/Gretzky Claims | NHL Subordinated Claims |
|---|---|---|
| $10 | $20 | $20 |

Assume first that $25 is available for distribution to the beneficial interests in the Liquidation Trust. Before any subordination, the $25 would be distributed thus:

| Non-Insider Claims | Moyes Claims/Gretzky Claims | NHL Subordinated Claims |
|---|---|---|
| $5 (20%) | $10 (40%) | $10 (40%) |

In light of the subordination, $5 of the NHL's $10 distribution would be redistributed to the Non-Insider Claims, giving them a $10 distribution, which equals the full amount the Non-Insider Claims. Redistribution would result in the original $25 being distributed thus:

| Non-Insider Claims | Moyes Claims/Gretzky Claims | NHL Subordinated Claims |
|---|---|---|
| $10 | $10 | $5 |

Assume later that another $10 becomes available for distribution to the beneficial interests in the Liquidation Trust. Because the Non-Insider Claimholders' beneficial interests have been satisfied, the $10 would be distributed thus:

| Non-Insider Claims | Moyes Claims/Gretzky Claims | NHL Subordinated Claims |
|---|---|---|
| $0 | $5 (50%) | $5 (50%) |

**3.04. Class 4—Equity Interests.** Class 4 consists of all Equity Interests.

    **a. Impairment and Voting.** Class 4 is impaired by the Plan. All holders of Equity Interests are deemed to reject the Plan and will not be solicited to vote on the Plan.

    **b. Treatment.** The holders of Equity Interests will not receive or retain any rights, property, or distributions on account of their Equity Interests under the Plan.

**ARTICLE 4.**
**IMPLEMENTATION**

**4.01. Effective Date Funding.** Funds needed to make Cash payments on and after the Effective Date on account of Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Claims under the Plan will come from the Debtor's Cash. The Debtor must reserve sufficient Cash on the Effective Date to pay all Administrative Claims, Priority Tax Claims, Priority Claims, and Cure amounts in the Maximum Amount. All Cash not so reserved will vest in the Liquidation Trust on the Effective Date. Any Cash remaining on reserve after all Administrative Claims, Priority Tax Claims, Priority Claims and Cure amounts have been either Disallowed or Allowed and paid in accordance with the Plan will vest in the Liquidation Trust.

**4.02. Liquidation Trust.** As of Effective Date, the Liquidation Trust will be formed and vested with all assets of the Estate other than the Cash reserved under Section 4.01 of the Plan for payments to holders of Administrative Claims, Priority Tax Claims, and Priority Claims. The Liquidation Trust will be administered by the Liquidation Trustee, who will be appointed on the Effective Date.

    **a. Liquidation Trustee.** Michael Carmel will begin serving as the Liquidation Trustee on the Effective Date. The Liquidation Trustee:

        (i) is a fiduciary of the beneficiaries of the Liquidation Trust, which are the holders of Allowed General Unsecured Claims;

        (ii) must administer the Liquidation Trust for the benefit of all holders of Allowed General Unsecured Claims;

        (iii) must make distributions from the Liquidation Trust to its beneficiaries strictly in accordance with the Plan;

        (iv) must use his reasonable best efforts to maximize the value of, and liquidate into Cash, all the Liquidation Trust's non-Cash assets, make timely distributions to beneficiaries, and not unduly prolong the existence of Liquidation Trust, which must wind down and dissolve after liquidating all its assets and distributing all Cash proceeds of that liquidation to the beneficiaries;

        (v) must control and manage the Liquidation Trust's assets, including, as necessary or appropriate: (A) selling assets and collecting proceeds; (B) filing, prosecuting, and settling objections to Claims; (C) prosecuting and settling Avoidance Actions and Litigation

Claims; and (D) making distributions to the Liquidation Trust's beneficiaries in accordance with the Plan;

(vi) may retain any Professional deemed necessary in its discretion to assist in the administration of Claims and assets, prosecution of Avoidance Actions and Litigation Claims, and as otherwise needed to carry out the Liquidation Trust's business, with any such Professionals to be paid either from available Cash or on other terms to which the Liquidation Trustee and the Professional agree;

(vii) subject to applicable law, will not be liable for any act or omission, except to the extent that the act or omission is determined by a court of competent jurisdiction to be the result of gross negligence, fraud, or willful misconduct (this limitation on liability applies equally to the agents, employees, and Professionals acting on the Liquidation Trust's behalf; all Persons dealing with the Liquidation Trust will be required to look solely to the Liquidation Trust's assets for the enforcement of any claims against the Liquidation Trust);

(viii) will be compensated in accordance with the fee schedule of Bankruptcy Code § 326;

(ix) may: (A) file interim fee notices with the Bankruptcy Court, detailing the services performed and costs incurred for which he seeks compensation and reimbursement; (B) be paid from available funds, 15 days after filing the related fee notice with the Bankruptcy Court, unless objections are filed within that 15-day period; (C) if no objections are timely filed, may receive full payment requested or, if an objection is timely filed, may receive payment of the uncontested portion; (D) file a final fee notice, detailing total distributions, and the total fees requested, under Bankruptcy Code § 326, with the Bankruptcy Court retaining jurisdiction to resolve any disputes regarding the reasonableness of the Liquidation Trustee's fees and expenses.

**b. Purposes.** The Liquidation Trust will operate, and its assets may be used, solely for the purposes of: (i) investigating, enforcing, abandoning, prosecuting and resolving (by litigation, settlement, or otherwise) the Avoidance Actions, the Litigation Claims, and all Disputed Claims; (ii) collecting on or liquidating all its non-Cash assets; (iii) distributing all Cash to its beneficiaries; and (iv) after all non-Cash assets are liquidated and all Cash is distributed, winding down and dissolving.

**c. Disputed Claims.** The Liquidation Trust must manage Cash distributions to beneficiaries so as to reserve sufficient Cash to make appropriate distribution on account of any beneficial interest attributable to a Disputed General Unsecured Claim as if that Disputed General Unsecured Claim were an Allowed General Unsecured Claim on the Effective Date in the Maximum Amount. If and when any Disputed General Unsecured Claim becomes an Allowed General Unsecured Claim, Cash sufficient to make appropriate distribution to the holder that Claim will be made from such reserves. If a Disputed General Unsecured Claim becomes a Disallowed General Unsecured Claim, all reserved distributions attributable to the holder of that Disputed General Unsecured Claim will become available for Pro Rata distribution to all beneficial interests attributable to Allowed General Unsecured Claims.

**d. Section 1145 Exemption.** In accordance with Bankruptcy Code § 1145, the issuance under the Plan of the beneficial interests in the Liquidation Trust is exempt from all federal, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealer in such securities and is deemed to be a public offer of such securities.

**e. Final Report.** On completion of the administration of the Liquidation Trust and distribution of all Cash, the Liquidation Trustee must file a final report with the Bankruptcy Court, along with a motion seeking approval of the final report and discharge of the Liquidation Trustee. The Liquidation Trustee's duties terminate on entry of a Bankruptcy Court order discharging the Liquidation Trustee.

**4.03. Cancellation of Instruments and Agreements.** On the Effective Date, all agreements, instruments, and other documents relating to any Equity Interests will automatically terminate such that all obligations under all such agreements, instruments, and other documents will be deemed fully and finally waived, released, canceled, extinguished, and discharged.

**4.04. Effectiveness of Instruments and Agreements.** On the Effective Date, all instruments, agreements, and documents issued, entered into, delivered, or filed under the Plan will be deemed to be effective, binding, and enforceable in accordance with their respective terms.

**4.05. No Corporate Action Required**. As of the Effective Date: (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements related to or contemplated by the Plan; and (b) the other matters provided for under, or in furtherance of, the Plan involving corporate action required of the Debtor, will be deemed to have occurred and become effective as provided in the Plan, and will be deemed authorized and approved in all respects without further order of the Bankruptcy Court or any further action by the Debtor's members or managers.

## ARTICLE 5.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.01. Assumption or Rejection of Executory Contracts and Unexpired Leases.** All executory contracts and unexpired leases between the Debtor and any Person are dealt with thus:

**a. Assumption of Executory Contracts and Unexpired Leases.** All executory contracts and unexpired leases set forth on the schedule of assumed executory contracts and unexpired leases filed with the Bankruptcy Court as part of Exhibit B to the Plan will be deemed assumed and assigned to a third party (as indicated on Exhibit B to the Plan) as of the Effective Date, except for any executory contract or unexpired lease: (i) that has been rejected in accordance with a Final Order entered before the Confirmation Date; or (ii) as to which a motion to reject has been filed with the Bankruptcy Court before the Confirmation Date.

**b. Rejection of Executory Contracts and Unexpired Leases.** All executory contracts and unexpired leases either (i) set forth on the schedule of rejected executory contracts and unexpired leases filed with the Bankruptcy Court as part of Exhibit B to the Plan or (ii) existing but not listed on Exhibit B to the Plan will be deemed rejected as of the Effective Date, except

for any executory contract or unexpired lease that has been assumed or rejected in accordance with a Final Order entered on or before the Confirmation Date.

**5.02. Approval of Assumption or Rejection.** Entry of the Confirmation Order constitutes: (a) the approval under Bankruptcy Code § 365 of the assumption and assignment of the executory contracts and unexpired leases assumed and assigned under the Plan; and (b) the approval under Bankruptcy Code § 365 of the rejection of the executory contracts and unexpired leases rejected under the Plan. Notwithstanding anything contained in this Section 5.02 to the contrary, the Debtor retains the right to add or change the treatment (assumed or rejected) of any executory contract or unexpired lease on Exhibit B to the Plan, thus changing the treatment of the contract or lease under the Plan, at any time before June 30, 2009.

**5.03. Cure of Defaults.** On the Effective Date or as soon after that date as feasible, the Debtor will Cure any defaults under any executory contract or unexpired lease assumed and assigned under the Plan. The Debtor will reserve sufficient Cash on the Effective Date to satisfy any potential Cure amounts for executory contracts or unexpired leases that may be assumed and assigned any time before June 30, 2009. Any reserved Cash not used to satisfy Cure amounts will vest in the Liquidation Trust. The Debtor will not, and need not as a condition to assuming and assigning any executory contract or unexpired lease under the Plan, Cure any default that need not be cured under Bankruptcy Code § 365(b).

**5.04. Rejection Claims Bar Date.** All Rejection Claims must be filed with the Bankruptcy Court by the later of (a) 30 days after the Confirmation Date and (b) 30 days after the applicable executory contract or unexpired lease is rejected under the Plan. Any Rejection Claim not filed within that time will be forever barred. All Rejection Claims are Class 2 Claims under the Plan. With respect to any executory contract or unexpired lease rejected by the Debtor before the Confirmation Date, the deadline for filing a Rejection Claim remains the deadline set forth in the order of the Bankruptcy Court authorizing that rejection. If such an order did not contain such a deadline, the deadline for filing a Rejection Claim is 30 days after the Confirmation Date.

**5.05. Indemnification Obligations.** Any obligation of the Debtor to indemnify any Person serving as a fiduciary of any employee benefit plan or employee benefit program of the Debtor, under charter, by-laws, contract, or applicable state law is deemed to be an executory contract and rejected as of the Confirmation Date (but subject to the occurrence of the Effective Date). Any obligation of the Debtor to indemnify, reimburse, or limit the liability of any Person, including but not limited to any officer or director of the Debtor, or any agent, professional, financial advisor, or underwriter of any securities issued by the Debtor related to any acts or omissions occurring before the Petition Date is rejected and canceled under the Plan as of the Confirmation Date (but subject to the occurrence of the Effective Date). Any Claim resulting from these rejections in favor of any Person must be filed no later than 30 days after the Confirmation Date. Notwithstanding any of the foregoing, nothing contained in the Plan affects the rights of any Person covered by any applicable D&O Policy with respect to any such policy.

**5.06. Benefit Plans.**

    **a. Generally.** All Benefit Plans are rejected and terminated as of the Confirmation Date if not earlier terminated. Any such terminations will be completed according to the terms and

conditions of each Benefit Plan and effected in conformity with all statutory and regulatory requirements including any applicable notice provisions. Any undistributed, vested benefits of the terminated Benefit Plans will be distributed to the participants as provided by applicable statutes and regulations and the Benefit Plans' provisions.

**b. Regulatory Approvals.** To ensure that the Benefit Plans' terminations comply with the Benefit Plans' terms and applicable statutes and regulations, the Debtor will obtain any necessary approvals of the relevant regulatory agencies, such as the Pension Benefit Guaranty Corporation, the IRS, and the U.S. Department of Labor, in respect of such terminations. The Bankruptcy Court will retain jurisdiction to hear and determine any disputes relating to the termination of any Benefit Plans.

## ARTICLE 6.
## DETERMINATION OF CLAIMS

**6.01. Objections to Claims.** Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been Allowed before the Effective Date, the Liquidation Trustee may object to the allowance of any Claim against the Debtor or seek estimation of any Claim on any grounds permitted by the Bankruptcy Code. All objections to Claims must be brought by filing the appropriate pleading in the Bankruptcy Court before the first Business Day that is 180 days after the Effective Date, but the Bankruptcy Court may approve a later date on the Liquidation Trust's motion filed (but not necessarily heard) before the first Business Day that is 180 days after the Effective Date.

**6.02. Contingent Claims.** Until a Contingent Claim becomes an Allowed Claim or is Disallowed, the Claim will be treated as a Disputed Claim for all purposes under the Plan. The holder of a Contingent Claim will be entitled to a distribution under the Plan only when the Contingent Claim becomes an Allowed Claim. Any Contingent Claim for reimbursement or contribution held by a Person that may be liable with the Debtor on a Claim of a Creditor is Disallowed as of the Effective Date if: (a) that Creditor's Claim is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Creditor under Bankruptcy Code § 509.

## ARTICLE 7.
## AVOIDANCE ACTIONS, LITIGATION CLAIMS

**7.01. Retention and Reservation.** All Avoidance Actions and Litigation Claims are retained and reserved for the Liquidation Trust, which is designated as the Estate's representative under Bankruptcy Code § 1123(b)(3)(B) for purposes of the Avoidance Actions and Litigation Claims.

**7.02. Prosecution.** The Liquidation Trust will have the authority to prosecute, defend, compromise, settle, and otherwise deal with any Avoidance Actions and Litigation Claims, and will do so in its capacity as a representative of the Estate in accordance with Bankruptcy Code § 1123(b)(3)(B). The Liquidation Trust will pay the fees and costs associated with litigating the Avoidance Actions and the Litigation Claims. The Liquidation Trust will have sole discretion to determine in its business judgment which Avoidance Actions and Litigation Claims to pursue, which to settle, and the terms and conditions of those settlements.

## ARTICLE 8.
## CONDITIONS PRECEDENT

**8.01. Conditions to Confirmation.** The following are conditions precedent to confirmation of the Plan:

      **a. Approval of Disclosure Statement.** The Bankruptcy Court enters a Final Order approving the Disclosure Statement.

      **b. Form of Confirmation Order.** The Bankruptcy Court enters the Confirmation Order in form and substance reasonably acceptable to the Debtor. If the Debtor is unable to reach an agreement with any party regarding the form and substance of the Confirmation Order, the Bankruptcy Court will resolve all such disputes.

      **c. Substance of Confirmation Order.** The Confirmation Order contains the following:

            (i) The provisions of the Confirmation Order are non-severable and mutually dependent;

            (ii) Approval of the Plan's assumption and assignment or rejection of all executory contracts and unexpired leases;

            (iii) The Debtor is released and discharged from all obligations arising under all executory contracts and unexpired leases rejected during the Chapter 11 Case or under the Plan;

            (iv) In accordance with Bankruptcy Code § 1123(b)(3)(B), the Liquidation Trust is appointed as the representative and agent of the Estate to prosecute, compromise, or abandon any Avoidance Actions and Litigation Claims in accordance with the Plan; and

            (v) The Bankruptcy Court retains jurisdiction to the fullest extent permissible by applicable law and at least to the extent contemplated by Article 10 of the Plan.

**8.02. Conditions to Effectiveness.** The following are conditions precedent to the Effective Date:

      **a.** The Confirmation Date occurs;

      **b.** No request for revocation of the Confirmation Order under Bankruptcy Code § 1144 is pending;

      **c.** Sufficient Cash exists to make all payments required under the Plan to be made on the Effective Date; and

      **d.** All instruments and agreements to be issued, entered into, delivered, or filed under the Plan are issued, entered into, delivered, or filed and are effective.

**8.03. Waiver of Conditions.** The Debtor may waive any condition to confirmation or the Effective Date, in whole or in part, at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to confirmation and consummation of the Plan.

# ARTICLE 9.
## TITLE TO PROPERTY; THIRD PARTY RIGHTS AND RELEASES

**9.01. Vesting of Assets.** Except as provided in the Plan or the Confirmation Order, all property of the Estate will vest in the Liquidation Trust on the Effective Date free and clear of all Liens and Claims existing before the Effective Date. From and after the Effective Date, the Liquidation Trust may use and dispose of property free of any restrictions of the Bankruptcy Code, including the employment of, and payment to, Professionals except as otherwise provided in the Plan or the Confirmation Order.

**9.02. Injunction.** Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim that is unclassified by the Plan or that is classified by Article 3 of the Plan or that is subject to a distribution under the Plan, or an Equity Interest or other right of an equity holder, are permanently enjoined from taking any of the following actions on account of any such Claims or Equity Interests or rights: (a) commencing or continuing in any manner any action or other proceeding against any property to be distributed under the Plan; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against any property to be distributed under the Plan; (c) creating, perfecting, or enforcing any Lien or encumbrance against any property to be distributed under the Plan; and (d) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code. Nothing in this Section 9.02 or elsewhere in the Plan is to be construed or is to have the effect of extinguishing, prohibiting, or otherwise limiting, the right of any holder of a Claim to assert a right to setoff or recoupment arising in connection with that Claim as part of the resolution and treatment of that Claim under the Plan. Nothing in this Section 9.02 or elsewhere in the Plan is to be construed or is to have the effect of extinguishing, prohibiting, or otherwise limiting, the right of the Estate or the Liquidation Trust to assert and prevail on any Avoidance Action or Litigation Claim. Nothing in this Section 9.02 or elsewhere in the Plan enjoins or otherwise precludes (or may be construed to enjoin or otherwise preclude) any party in interest from enforcing the terms of the Plan and the Confirmation Order.

**9.03. Exculpation.** None of the Debtor, the Liquidation Trust, the Committee, or any of their respective members, officers, directors, trustees, employees, advisors, professionals, or agents (other than those Persons identified as a possible defendant on Exhibit A) have or will incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and, in all respects, the Debtor, the Liquidation Trust, the Committee, and each of their respective members, officers, directors, trustees, employees, advisors, professionals, and agents (other than those Persons identified as a possible defendant on Exhibit A) are entitled to rely on the advice of counsel with respect to their duties and responsibilities under the Plan.

**9.04. Preservation of Insurance.** The satisfaction of Claims as provided in the Plan, except as necessary to be consistent with the Plan, does not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtor or any other Person.

# ARTICLE 10.
## RETENTION OF JURISDICTION

**10.01. Jurisdiction.** Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain as much jurisdiction over the Chapter 11 Case after the Effective Date as legally permissible, including jurisdiction to:

   **a.** Allow, disallow, determine, liquidate, classify, estimate, or establish the amount, priority, or secured or unsecured status of any Claim, and resolve any request for payment of any Administrative Claim and any objection to the Allowance or priority of any Claim;

   **b.** Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized under the Bankruptcy Code or the Plan;

   **c.** Resolve any matters related to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party and to hear, determine and, if necessary, liquidate any Claims arising from such rejection;

   **d.** Ensure that distributions required under the Plan are accomplished in accordance with the Plan;

   **e.** Decide or resolve any motions, adversary proceedings, contested matters, and any other matters and grant or deny any applications or motions involving the Debtor that may be pending on the Effective Date;

   **f.** Enter any necessary or appropriate orders to implement or consummate the Plan's provisions and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

   **g.** Resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan, or any Person's obligations incurred in connection with the Plan;

   **h.** Hear and determine any motion or application to modify the Plan before or after the Effective Date under Bankruptcy Code § 1127 or modify the Disclosure Statement or any contract, instrument, release, or other agreement or document issued, entered into, filed, or delivered in connection with the Plan or the Disclosure Statement; or hear or determine any motion or application to remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document issued, entered into, filed or delivered in connection with the Plan or the Disclosure Statement, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

   **i.** Issue injunctions, enter and implement other orders, or take any other necessary or appropriate actions to restrain any entity's interference with consummation or enforcement of the Plan;

**j.** Enter and implement any necessary or appropriate orders if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

**k.** Determine any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document issued, entered into, filed, or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

**l.** Issue a final decree and enter an order closing the Chapter 11 Case; and

**m.** Adjudicate the Disputed Claims, the Avoidance Actions, and the Litigation Claims and any other cause of action or claims of the Estate.

## ARTICLE 11.
## AMENDMENT AND WITHDRAWAL OF PLAN

**11.01. Amendment of Plan.** At any time before the Confirmation Date, the Debtor may alter, amend, or modify the Plan under Bankruptcy Code § 1127(a) as long as doing so does not materially and adversely affect the treatment and rights of the holders of Claims and Equity Interests under the Plan. After the Confirmation Date but before substantial consummation of the Plan as defined in Bankruptcy Code § 1101(2), the Debtor or the Liquidation Trust may, under Bankruptcy Code § 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and any matters necessary to carry out the purposes and effects of the Plan as long as such proceedings do not materially and adversely affect the treatment of holders of Claims or Equity Interests under the Plan. The Debtor or Liquidation Trust must serve prior notice of such proceedings in accordance with the Bankruptcy Rules or applicable order of the Bankruptcy Court.

**11.02. Revocation or Withdrawal of Plan.** The Debtor may revoke or withdraw the Plan at any time before the Confirmation Date. If withdrawn or revoked, the Plan is void and nothing contained in the Plan may be deemed a waiver of any Claims by or against the Debtor or any other Person in any further proceedings involving the Debtor or an admission of any sort, and the Plan and any transaction contemplated by the Plan may not be admitted into evidence in any proceeding.

## ARTICLE 12.
## MISCELLANEOUS

**12.01. Effecting Documents; Further Transactions; Timing.** The Debtor and the Liquidation Trust are authorized and directed as of the Effective Date, without further order of the Bankruptcy Court, to execute, deliver, file, or record all contracts, instruments, releases, and other agreements or documents, and to take all actions necessary or appropriate to effect and further evidence the terms of the Plan. All transactions required to occur on the Effective Date under the terms of the Plan are deemed to have occurred simultaneously.

**12.02. Exemption From Transfer Taxes.** Under Bankruptcy Code § 1146(a): (a) the issuance, distribution, transfer, and exchange of assets or property of the Estate; (b) the execution,

assignment, modification, or recording of any lease or sublease; and (c) the execution, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, the Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to, the foregoing are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, or real estate transfer tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents are directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**12.03. Binding Effect.** The Plan is binding on, and inures to the benefit of, the Debtor and the holders of all Claims and Equity Interests and their respective successors and assigns.

**12.04. Governing Law.** Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any document entered into in connection with the Plan, the rights, duties and obligations of any Person arising under the Plan are governed by, and construed and enforced in accordance with, the internal laws of the State of Arizona, without giving effect to Arizona's choice of law provisions.

**12.05. Modification of Treatment of Claims.** The Liquidation Trust reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the holder of that Claim at any time after the Effective Date on that holder's prior written consent.

**12.06. Setoffs and Recoupment.** The Debtor and the Liquidation Trust may, but are not required to, set off or recoup against any Claim and the payments or other distributions to be made under the Plan in respect of such Claim, Claims of any nature that arose before the Petition Date that the Estate may have against the holder of such Claim to the extent such Claims may be set off or recouped under applicable law, but neither the failure to do so nor the fact of any Claim under the Plan becoming Allowed constitutes a waiver or release by the Estate of any such claim that it may have against such holder.

**12.07. Notices.** Any notice required or permitted to be provided under the Plan must be in writing and served by certified return-receipt-requested U.S. mail, hand delivery, overnight courier, or read-receipt-enabled e-mail to:

|  |  |  |
|---|---|---|
| To the Debtor: | Coyotes Hockey, LLC | |
| | c/o Squire, Sanders & Dempsey, L.L.P. | |
| | 40 North Central Avenue, Suite 2700 | |
| | Phoenix, Arizona 85004 | |
| | Attn: | Thomas J. Salerno, Esq. |
| | | Jordan A. Kroop, Esq. |
| | E-mail: | tsalerno@ssd.com |
| | | jkroop@ssd.com |

<table>
<tr><td>To the Liquidation<br>Trustee:</td><td>Michael Carmel, Esq.<br>80 E. Columbus Ave.<br>Phoenix, AZ 85012<br>E-mail: Michael@mcarmellaw.com</td></tr>
</table>

**12.08. Delivery of Notices.** If personally delivered, notice is deemed delivered on actual receipt; if e-mailed in accordance with the Plan, notice is deemed delivered noon of the first Business Day following transmission; if sent by overnight courier in accordance with the Plan, notice is deemed delivered noon of the first Business Day following deposit with such courier; and if sent by U.S. mail in accordance with the Plan, notice is deemed delivered as of the date of delivery indicated on the receipt issued by the relevant postal service; or, if the addressee fails or refuses to accept delivery, as of the date of that failure or refusal. Any party to the Plan may change its address for the purposes of the Plan by giving notice of the change.

**12.09. Termination of Committee.** Unless terminated sooner by the U.S. Trustee, the Committee terminates on the Effective Date and has no further authority or duties in respect of the Chapter 11 Case after the Effective Date, except with respect to preparing, reviewing, filing, and objecting to, Professionals' applications for compensation and reimbursement of expenses.

**12.10. Severability.** If the Bankruptcy Court finds the Plan or any provision of the Plan to be invalid, illegal or unenforceable, or if the Bankruptcy Court cannot confirm the Plan under Bankruptcy Code § 1129, the Bankruptcy Court, at the Debtor's or the Liquidation Trust's request, may retain the power to alter and interpret the Plan or any such provision to make it valid or enforceable to the maximum extent feasible, consistent with the original purpose of the provision held to be invalid or unenforceable, and such provision will then become applicable as altered or interpreted. The Confirmation Order constitutes a judicial determination and provides that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

**12.11. Plan Documents.** Notwithstanding anything to the contrary contained in the Plan, including any reference in the Plan to documents in the forms annexed to the Plan as exhibits, the Debtor may revise any such document by filing the revised document with the Bankruptcy Court at least five days before the deadline for voting on the Plan, or with the written consent of all parties in interest that are entitled to vote on the Plan and are materially and adversely affected by the revision.

**12.12. Inconsistency.** If any inconsistency between the Plan and the Disclosure Statement exists, the Plan governs. If any inconsistency between the Plan and any document promulgated under the Plan exists, the document governs.

**12.13. Subordination.** The distributions under the Plan take into account the relative priority of each Claim in connection with any contractual subordination provisions relating to such Claim. Accordingly, distributions under the Plan are not and may not be subject to levy, garnishment, attachment, or other legal process by any holder of a Claim or Equity Interest purporting to be entitled to the benefits of such contractual subordination, and all such holders are deemed to have waived all contractual subordination rights they otherwise may have had.

**12.14. Withholding and Reporting Requirements.** In connection with the Plan and all instruments issued in connection with the Plan, the Debtor or the Liquidation Trust, as the case may be, must comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions under the Plan remain subject to any such withholding and reporting requirements. The Debtor and the Liquidation Trust, as the case may be, may take all actions necessary to comply with such withholding and reporting requirements. Notwithstanding any other provision of the Plan, each holder of an Allowed Claim that has received a distribution under the Plan has sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding, and other tax obligation on account of such distribution.

**12.15. Post-Effective Date Fees; Final Decree.** The Liquidation Trust will be responsible for paying any post-Effective Date fees under 28 U.S.C. § 1930(a)(6) and filing post-confirmation reports until the Bankruptcy Court enters a final decree, which will be as soon as feasible after distributions under the Plan have commenced. Notice of application for a final decree need be given only to those holders of Claims and Equity Interests and other parties that, after the Effective Date, specifically request such notice.

**12.16. De Minimis Distributions.** No distributions of less than $10 will be made on account of any Claim. If the holder of an Allowed Claim does not receive a distribution owing to the provisions of this Section 12.16 on the Effective Date or any subsequent date, the Allowed Claim remains eligible for distributions on the first date set for distributions when such distribution exceeds $10.

**12.17. Method of Payment; Payments, Filings, and Notices Only on Business Days.** Payments of Cash under the Plan must be made by check drawn on a domestic bank or by wire transfer from a domestic bank. Whenever any payment, distribution, filing, delivery, or notice to be made under the Plan is due on a day other than a Business Day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

**12.18. Delivery of Distributions; Undeliverable Distributions.** Distributions to a holder of an Allowed Claim will be made: (a) to the address set forth on the holder's proof of claim, the Schedules, or, if no proof of claim is filed and the holder does not appear on the Schedules, the holder's last known address; or (b) to the address set forth in any written notice of address change delivered to the Debtor or the Liquidation Trust. If any holder's distribution is returned as undeliverable, no further distributions to that holder will be made unless and until the Liquidation Trust is notified of the holder's then-current address. Claims held by a holder whose distributions are returned as undeliverable and who fails to notify the Liquidation Trust of its correct address within 90 days after the distributions are returned to the Liquidation Trust as undeliverable will be expunged, after which all unclaimed property will revert to the Liquidation Trust free of any restrictions. Claims in respect of void checks and the underlying distributions are forever barred against the Debtor, the Liquidation Trust, or their respective property, notwithstanding any federal or state escheat laws to the contrary. Nothing contained in the Plan requires the Debtor or the Liquidation Trust to attempt to locate any holder of an Allowed Claim.

**12.19. Failure to Negotiate Checks.** Checks issued in respect of distributions under the Plan are void if not negotiated within 120 days after issuance. Any amounts returned to the Liquidation Trust in respect of a non-negotiated check will be held by the Liquidation Trust. Requests for reissuance of any such check must be made directly to the Liquidation Trust by the holder of the Allowed Claim with respect to which such check originally was issued. All amounts represented by any voided check will be held until the later of six months after the Effective Date and six months after the voided check was issued, and all requests for reissuance by the holder of the Allowed Claim in respect of the voided check must be made before that date. Thereafter, all such amounts revest in the Liquidation Trust free of any restriction. All Claims in respect of void checks and the underlying distributions are forever barred against the Debtor, the Liquidation Trust, or their respective property, notwithstanding any federal or state escheat laws to the contrary.

Dated: May 10, 2010

**COYOTES HOCKEY, LLC**

By:    */s/ Jerry Moyes*
       Jerry Moyes
       Managing Member

**SQUIRE, SANDERS & DEMPSEY L.L.P.**

By:    */s/ Jordan A. Kroop*
       Thomas J. Salerno
       Jordan A. Kroop
Two Renaissance Square, Suite 2700
40 North Central Avenue
Phoenix, Arizona 85004

Counsel for Debtor